## LYON *against* LYMAN.

9 55
74 380

Where the plaintiff in an action for a libel, to prove that the paper alleged to be libellous, was in the hand-writing of the defendant, introduced witnesses, who had seen him write, who testified, that they believed the paper to be in the hand-writing of the defendant, but who, on their cross-examination, said, that they did not know that they were sufficiently acquainted with his hand to determine, except by comparing it with other writings of his proved to be genuine ; it was held, that such testimony was admissible.

Where the plaintiff in such action offered the testimony of cashiers of banks, who had never seen the defendant write, and who had no knowledge of his hand-writing, but who had compared the paper in question with other writings proved to be his, and who testified, that they were written by the same hand, and that such paper was in a disguised hand ; it was held, that such cashiers, as persons of skill in the irart, were competent witnesses to establish these points.

Where the plaintiff in such action, to prove the genuineness of the alleged libel, offered other writings proved to be in the hand-writing of the defendant, to go to the jury, to be compared by them with the paper in dispute ; it was held, that such writings were admissible for that purpose.

THIS was an action for a libel ; tried at *Brooklyn, October* term, 1830, before *Williams,* J.

The plaintiff produced the paper alleged in the declaration to be a libel, and offered to shew, that it was in the hand-writing of the defendant, by shewing other writings of the defendant, which were proved to be genuine and to have been written by the defendant, to be compared by the jury with the paper so set forth in the declaration.

He also offered sundry witnesses, who had seen the defendant write, who testified, that they believed the paper to be in the hand-writing of the defendant, but who, on their cross-examination, said, that they did not know that they were sufficiently acquainted with his hand to determine, except by comparing it with those genuine writings.

He also offered the depositions of divers cashiers of banks, who had never seen the defendant write, and who had no knowledge of his hand-writing, to testify, that in their opinion,

the libel and other writings shewn to them and produced on the trial, and proved to be in the hand-writing of the defendant, were written by one and the same person; and also, that the libel was written in a disguised hand.

Objections were made to the introduction of all the testimony thus offered; but they were overruled, and the testimony went to the jury. The plaintiff obtained a verdict; and the defendant moved for a new trial.

*H. Strong,* in support of the motion, contended, 1. That the hand-writing of the alleged libel could not be proved, by introducing other papers to the jury, proved to have been written by the defendant, for the purpose of enabling *them* to institute a comparison. *Peake's Ev.* 105. [103.] 2 *Stark. Ev.* 554. *Swift's Ev.* 29. 2 *Saund. Ev.* 554. *Da Costa* v. *Pym, Peake's Ev.* Append. *lxxxv. Macferson* v. *Thoytes, Peake's Ca.* 20. *The State* v. *King, Peake's Ca.* 21. n. (1) by *Day.* The general grounds on which such evidence has been excluded, are, first, that if admitted, an unfair selection of specimens might be made for the purpose of comparison; and secondly, the examination might branch out into an indefinite number of collateral enquiries, as the genuineness of each specimen produced might be assailed on the one hand, and supported on the other, by the production of other specimens, and so on, *ad infinitum.* A Third reason, suggested in some of the cases, *viz.* that the jury may not be able to read, it is admitted, is not applicable here.

2. That the belief of witnesses as to the hand-writing of the paper in question, derived solely from a comparison of it with other writings, and not from their acquaintance with the hand-writing of the party, was inadmissible evidence. *Batchelor* v. *Honeywood,* 2 *Esp. Rep.* 714. *Garrells* v. *Alexander,* 4 *Esp. Rep.* 37. *The King* v. *Cator,* 4 *Esp. Rep.* 146, and note by *Day, p.* 273. *a. Eagleton* & al. v. *Kingston,* 8 *Ves.* jun. 438. 474. & *seq.* The proof of hand-writing resembles that of character. The witness must have some knowledge of the character in question; and must testify from that knowledge. So the witness of hand-writing must have some knowledge of the hand-writing of the party. And it ought not to destroy the rule, that in a given instance, evidence within it may be less satisfactory than some other which it excludes. General rules are not framed with reference to particular extreme cas-

es. The presumptive heir of a large estate is a competent witness to support the title of his ancestor, while the smallest fixed interest in another will exclude him. If, in ordinary cases, it is safest to require of the witness some acquaintance with the hand-writing, which he is called to swear to, this is sufficient to vindicate the rule. See 4 *Day's Esp.* 273. *e.* n. *ad finem.*

3. That the testimony of cashiers of banks, who had no acquaintance with the defendant's hand-writing, was inadmissible. Here it is material to observe, that there is nothing in the case, which distinguishes these cashiers from ordinary persons. The motion does not state, that they had any peculiar *skill.* Nor is this presumable from their employment merely. It might with more plausibility be inferred from the office of inspector of franks ; yet it has been decided, that an officer of that description cannot testify from the similitude of characters, without some actual knowledge of the hand-writing of the party. *Stranger* v. *Searle,* 1 *Esp. Rep.* 14. *Batchelor* v. *Honeywood,* 2 *Esp. Rep.* 714. *Gurney* & al. v. *Langlands,* 5 *Barn. & Ald.* 330. There is no necessity of introducing cashiers of banks to usurp the province of the jury.

*Goddard* and *Frost,* contra, contended, That in this state, evidence by comparison of hands,—*i. e.* a comparison by juxta-position of two writings, in order, by such comparison, to ascertain whether both were written by the same person,—is admissible ; and this, whether such comparison be made by a witness, acquainted, or unacquainted, with the hand-writing of the party, by the jury, or by a person skilled in the detection of forgeries. These different aspects of the case rest upon the same principles. A witness acquainted with the hand-writing of the party always institutes a comparison in his mind. He compares the paper in question with what he has seen the party write ; and from such comparison forms his opinion. He could decide better, if he had the genuine writing before him. The decisions, in *England,* have not been uniform. Though we find it laid down as a general rule, that evidence by comparison of hands, is not admissible ; yet even there the jury have been allowed to examine papers admitted to be of the party's hand-writing, and to compare them with the writing in question. *Allesbrook* v. *Roach,* 1 *Esp. Rep.* 351. Such has always been the practice in *Connecticut. The State* v. *Brun-*

son, 1 *Root* 307. In *Massachusetts* and *Maine*, it has been the invariable usage to receive evidence by comparison of hands, in every form presented by this case. *Homer* v. *Wallis,* 11 *Mass. Rep.* 309. *Hammond's case,* 2 *Greenl.* 33. In *Pennsylvania,* it has been received in corroboration of other evidence given in support of the writing. *McCorkle* v. *Binns,* 5 *Binn.* 349. In *South Carolina,* it has been admitted in aid of doubtful proof. *Bowman* v. *Plunkett,* 2 *McCord* 518.

The testimony of persons skilled in hand-writing generally, has been received every where. *Goodtitle* d. *Revett,* v. *Braham,* 4 *Term Rep.* 497. *Rex* v. *Cator,* 4 *Esp. Rep.* 117. 145. *Birch* v. *Crewe, Lond.* sittings after *trin.* term 1821, cor. *Abbott,* Ch. J.

The objections urged against evidence by comparison of hands, are either futile or groundless in point of fact. Of the latter description is that which alleges the incapacity of the jury to read writings; especially, when applied to an *American* jury. 1 *Esp. Rep.* 352. n. 1. by *Day.* Another reason, suggested, by some writers, against the admission of this evidence, is, that there may be unfairness in the selection of specimens. But there is no more danger of unfairness in this than in the selection of documentary evidence and witnesses in any other case. The party on whom the *onus probandi* lies, will, of course, bring forward such evidence as he thinks will further his object ; and it is open to the adverse party to do likewise. As to the objection, that if this evidence were admitted, it would extend the enquiry indefinitely,—there is no more danger or difficulty to be apprehended from it, than in many other cases—*e. g.* the proof of *character,* &c. All *circumstantial* evidence is obnoxious to the same objection. Each circumstance adduced on one side, may be disproved, on the other, by opposing circumstances ; and each of the latter may be controverted, in the same way ; and so on indefinitely.

*Starkie* is evidently of opinion, that so far as *the ascertainment of truth* is concerned, (the great object of all evidence,) the evidence in question ought to be received ; for, says he, " a witness is more likely to form a correct judgment as to the identity of hand-writing, by comparing it critically and minutely with a fair and genuine specimen of the party's hand-writing, than he would be able to make, by comparing what he sees with the faint impression made by having seen the party

write but once, and then, perhaps, under circumstances which did not awaken his attention." 2 *Stark. Ev.* 656, 7.

DAGGETT, J. The question now presented for discussion, is, whether the whole or any part of the testimony was admissible. If not admissible in whole, a new trial must be granted ; otherwise not.

It is not to be concealed, that there are conflicting opinions on these points, both in our elementary writers and in the decisions of courts, in this country and in *Great Britain.*

These general positions on this subject, may be considered as established, by the modern cases. First, that the same rule prevails in civil and criminal cases. *Francia's* case, 6 *St. Tr.* 70. *Layer's* case, 6 *St. Tr.* 275. *Rex* v. Dr. *Hensey,* 1 *Burr.* 642. Lord *Preston's* case, 4 *St. Tr.* 446. *De la Mott's* case, 21 *Howell's St. Tr.* 810. *Rex* v. *Cator,* 4 *Esp. Rep.* 117. *The Attorney General* v. *Le Merchant, Bul. N. P.* 236. 2 *Stark. Ev.* 658.

Secondly, a witness may be called and asked if he has seen a particular person write. If he answers affirmatively, he may be asked whether he believes the paper in dispute to be his hand-writing. 1 *Phill. Ev.* 422. 2 *Stark. Ev.* 652, 3, 4. and the numerous cases there cited.

This kind of evidence may be so weak as to be unsafe to act definitively upon, or so strong as to produce conviction, according to the means of knowledge of the witness ; still it is to be received and weighed by the jury. 1 *Phill. Ev.* 422. The difference in weight of the testimony of a person who had written in the same counting-room or office with another for years, and that of an almost stranger who had never seen him write more than once or twice, would be very great.

Thirdly, a witness may testify to the hand-writing of a person, though he may never have seen him write, from a correspondence with him, or from a familiar acquaintance with his writings. 1 *Phill. Ev.* 424. 4 *St. Tr.* 338. *Titford* v. *Knott,* 2 *Johns. Ca.* 211. *Smith's Rep. First Cir. U. S.* 160. 2 *Stark. Ev.* 652. & seq.

With these positions in view, I will examine the questions, though not in the order presented on the motion.

1. The first class of witnesses had seen the defendant write.—They believed it to be his hand-writing ; but on cross-

examination, they said, they did not know that they were sufficiently acquainted with it to *determine* it to be his, except by comparing it with the writings proved to be genuine. Surely, the objection here was entirely to the weight of their testimony, and not to their admissibility. A fair paraphrase of their testimony is, that they *believed* it to be his hand-writing from having seen him write. This, according to the second position, would render the testimony admissible. But they *knew* it to be his, by comparing it with his other writings.

Again, this testimony could not be rejected consistently with the third position, *viz.* a knowledge by a correspondence or an acquaintance with his writings. Surely, if the writings of a person are presented for inspection, a witness may speak as certainly respecting them, as he may, by recalling to his recollection writings heretofore seen.

2. The depositions of cashiers of banks were offered, who had never seen the defendant write, and who had no knowledge of his hand-writing, but who had compared the libel in question with other writings proved to be his, and who testified that they were written by the same hand, and that the libel was written in a disguised hand. As to comparison of hands, which was here admitted, that will be examined more fully when the next point shall be considered. Might the cashiers testify, that the hand-writing was disguised ? Clerks in the general post-office, who had been employed to inspect franks and detect forgeries, were admitted by the court of king's bench, to testify, whether a writing was in an imitated or natural character. It was considered a question of art, which might be answered by a person of skill and experience. Cashiers of banks are employed in the inspection and examination of writings. It is, at this day, especially, when forgeries are so common, almost an habitual practice to view signatures and writings of all kinds with a scrutinizing eye ; and thus they acquire a degree of skill which enables them to speak with confidence, and which entitles their testimony to weight. Artizans of all kinds are to be credited, when they speak of the productions of others of the same occupation ; and their skill and dexterity is sometimes surprising to those not conversant with such subjects. I see no objection to the testimony thus far.

3. The next and only remaining point is, whether the judge at the circuit was correct in admitting other writings, proved to

be genuine writings of the defendant, to go to the jury, for them to compare with the paper in dispute, and thereby to ascertain, whether it was the hand-writing of the defendant. It is not denied, that the general rule found in our elementary writers, is opposed to this decision. *Swift,* in our own state, and *Starkie* and *Phillips,* and many others, concur in declaring such testimony inadmissible. Mr. *Day,* in a learned note to his edition of *Esp. Rep. vol.* 4. *p.* 273. examined all the cases on this subject, and came to the same result. The treatises of *Starkie* & *Phillips* have appeared since the note of Mr. *Day ;* and several cases are cited by those writers in favour of the admissibility of this species of evidence. In *Abbe* v. *Daniels, Worcester* county, *Mass. September* term 1811, *Parsons,* Ch. J. admitted skilful witnesses, who had never seen the defendant write, to swear, that the signature in dispute was not, in their opinion, a natural one, nor written by the same person who made other signatures, which were produced and acknowledged to be the defendant's. 2 *Stark. Ev.* 658. note 1. by *Metcalf.* In *Massachusetts* and *Maine,* comparison of hands is always admitted. *Homer* v. *Wallis,* 11 *Mass. Rep.* 309. *Hammond's* case, 2 *Greenl.* 33. In *New-York,* it is doubtful whether genuine papers can be delivered to the jury to determine, by comparison, the genuineness of the paper in question. *Titford* v. *Knott,* 2 *Johns. Ca.* 211. In *Pennsylvania,* such evidence is received in corroboration. *McCorkle* v. *Binns,* 5 *Binn. Rep.* 340. 349. *Pennsylvania* v. *McKee, Addis. Rep.* 33. The same evidence has been recognized in *South Carolina,* where it is offered in aid of other proof. *Boman's* admr. v. *Plunkett,* 2 *McCord* 518. The only reported case on that subject, in *Connecticut,* is that of *the State* v. *Brunson,* 1 *Root* 307. where this species of evidence was admitted in a criminal case. I am aware, that there have been contradictory decisions on this point, at the circuits ; but it has never come before this court till now. Under these circumstances, the court may, without embarrassment, resort to the reason of the rule.

It is said by *Starkie,* that an unfair selection of specimens may be made for the purpose of comparison. 2 *Stark. Ev.* 656. It is not suggested, that any advantage would thereby be given to one party over the other. The party whose hand-writing is questioned, may be presumed to know more of the sources of proof of his own writing, than the party who is bound to establish it ; and it would, therefore, be a singular objection

for him to make.   And  again ;  the same objection lies against the introduction of witnesses, who are to testify their knowledge of the hand-writing.   In both cases, proof may be expected favourable to the party introducing it ; and it will be always selected with that view.

It is again alleged, as a more satisfactory objection, that it might open the door to a great deal of collateral evidence, which might branch out into a very inconvenient length.   2 *Stark. Ev.* 656.   It is believed, that this objection lies with equal force against many other kinds of proof, which is daily admitted.   All those questions, which are to be decided by the *opinions* of witnesses, are of this description.

But the great objection, and the only one suggested by the courts,   in the adjudged cases, is, the ignorance of the jury on the subject of writings.   The jurors, say the courts in *Great Britain* and elsewhere, cannot read or write ; and it certainly would be a great absurdity, that men should be called to compare writings, who are entirely ignorant of letters.   If this objection could prevail any where else, it cannot be admitted here.   None of this description are ever summoned on the jury in *Connecticut.*   Jurors are selected in each town, by the civil authority and select-men, from the freeholders.   The number is from six to forty, according to the population.   They are generally among the best informed of their fellow-citizens ; and to such men  may safely be confided the decision of all questions of fact.   It also rarely occurs, that a jury, empannelled in our courts, does not contain some persons well versed in writings.   It has been said, and so it is believed, the law is every-where, that a witness who has seen a person write but once or twice, and that perhaps ten or twenty years ago, is to be received, to give to the  jury an opinion whether the paper in question be the hand-writing of the party to whom it is ascribed, and yet that writings proved to be genuine may not be shown to the jury to form  their opinion of his credibility.   If this be indeed so, it is a case without analogy.   A witness may be prejudiced ;—the jury are presumed to be impartial.   They can decide, by inspection, on the weight to be given to his testimony, and that too, generally, with a good degree of accuracy.   The  witness describes how the person made his letters, wherein the writing is disguised, and the result of his opinion.   Why not permit the jury to see the grounds of his conclusion, by examining those writings from

which he has derived it. Maps, plates, charts, surveys, plans and models of machines, are constantly given to the jury to form their opinions in cases where they apply ; but jurors are not generally more skilled in mathematics, surveying and mechanism, than in writing.

But I forbear. It has always appeared to me a very feeble objection ; and I rejoice to see it overruled. The motion ought to be denied.

The other Judges were of the same opinion ; some of them remarking, that they had considered the rule as otherwise established, but they were willing thus far to change it.

New trial not to be granted.