JOSIAH CAPEN vs. HENRY W. PECKHAM.

An entire case can not be carried up by proceedings in error, but only particular errors in the rulings of the court.

Where however the question was whether several articles annexed to the freehold were a part of the realty or were personal property, and the court below in a bill of exceptions stated the facts with regard to each, and its decision as to its character, it was held that the decision as to each could be reviewed on a writ of error.

To constitute a fixture, it is necessary that it should appear, from all the circumstances, that a permanent annexation of the article to the freehold was intended.

The character of the annexation is of great importance as showing the intent with which it was made.

A windlass used in a slaughter house, which passed through and turned in timbers firmly secured to the building, held to be a part of the realty.

Sundry other articles, used in the same building, not so firmly secured to the building, held to be personal property.

TRESPASS on the case, for an injury to the plaintiff's reversionary interest in certain premises occupied as a slaughter house by the defendant, a tenant, in the removal of sundry articles claimed to be fixtures, with a count in trover for the same articles as personal property; brought originally to the city court of the city of Hartford, where judgment was rendered for the defendant, and thence carried by the defendant, by motion in error, to the Superior Court in Hartford county, where the case was reserved for the advice of this court.

The following bill of exceptions was allowed in the city court :

" On the trial of this cause the defendant admitted the facts stated in the first count of the plaintiff's declaration, except that he denied that the articles removed by him were so affixed to the buildings as to constitute a part of the realty, but claimed that they were personal property and belonged to him, and that therefore he had a lawful right to remove them. To sustain the first count the plaintiff offered competent evidence to prove, and did prove, the following facts, none of which were controverted by the defendant, namely, that prior to April 15th, 1854, the plaintiff was the owner of the land described, and erected thereon a building, and placed

in it the poles, wheel and shaft and ropes attached, windlass and ropes, four yokes or slides, one set of pulleys and blocks with ropes, cross-bar and hooks, and the ring and staple mentioned in the first count of the declaration; that he erected the building for a slaughter-house, and put in the above mentioned articles for purposes of slaughtering, and such building and articles were used for the purposes of slaughtering continuously from the time of the erection of the building until the articles were removed by the defendant as charged in the first count; that he sold the land, building and appurtenances on the 15th of April, 1854, to one Henry Clark, and gave to Clark a deed of warranty in the usual form of deeds to convey real property; that Clark, on the 1st of September, 1854, conveyed the property to the defendant by a deed of warranty in the usual form of deeds to convey real property, making no reference in terms to the personal property; that under such deed the defendant took possession of and used and claimed title to the articles above described, and the same were not conveyed or transferred to him by Clark, by any other instrument or contract except such deed; that on the 13th of November, 1863, the defendant by a warranty deed conveyed the land with all the buildings and other appurtenances on said premises to Joseph W. Dimock, and on the 16th of November, 1863, took from Dimock a lease of the land and buildings so conveyed, to commence on the 13th of November, 1863, and continued to occupy the premises under the lease from that time until the time of committing the acts charged in the first count; that on the 6th day of April, 1867, Dimock gave the plaintiff a warranty deed of the land " with all the buildings and other appurtenances on said premises ;" that said poles were each about thirty feet long, corresponding with the length of said building, and about ten inches in diameter, and the ends of the poles being hewed to a flat surface were laid on opposite beams of the building about fifteen feet above the ground ; that each of said slides or yokes was in the form of an ox bow, with a bar across the ends to which was attached a hook, the ends of the bow passing through the bar and being fastened by keys or pins; that these bows or slides were hung

inverted on one or the other of said poles, and were used for hanging the carcassess of slaughtered animals ; that said wheel was about eight feet in diameter, and the shaft of it was about fourteen feet long, corresponding to the width of the building ; that the end of the shaft rested on the oppo- site plates of the building, which were about twenty feet above the ground, a notch being cut in each plate suitable to hold the shaft in position, in which notches the ends of the shaft were placed and revolved ; that attached to the shaft were two large ropes with a hook in each ; that around the wheel and attached to it was a rope, which also was attached to the windlass, by means of which the wheel and windlass revolved together ; that the windlass was about three feet in length, each end of which passed through a hole in the upright piece of timber, which pieces of timber were firmly nailed to the building at the top and bottom ; that on one end of the windlass was a crank and handle, the crank being fastened to the windlass by a pin ; that the cross-bar with hooks at- tached was at the time it was removed by the defendant about ten feet in length, and situated in a building connected with the building first mentioned, which was erected by Clark on the land ; that it was supported at one end by a beam of the new building, and at the other by an upright plank which was nailed to the building, and was held in position by a notch cut for it in the upper end of the plank, and by boards nailed on each side of it to the timber on which it rested ; that this cross-bar was about fourteen feet in length ; that when it was placed by Capen on the first named building at the time of its erection, its ends then rested on opposite beams of that building, and after the sale of the land by Capen, and before the conveyance to the defendant, it was cut off and re- moved to the position first described ; that the ring and sta- ple were fastened to the floor of the first named building by means of a nut applied to the end of the staple under the floor ; that the set of pulleys and blocks and ropes which the plaintiff placed in the building as before stated, were attached to the building by a rope ; and that all of these articles hav- ing been placed in such positions by the plaintiff, remained in the same positions respectively until removed by the de-

fendant as charged, except the cross-bar. The defendant claimed that, notwithstanding the facts above set forth, all said articles were personal property and belonged to the defendant, and the court sustained said claim, and thereupon rendered judgment for the defendant, to which ruling and decision the plaintiff excepted at the time, and files this his bill of exceptions, and prays that the same may become a part of the record in this case, which bill of exceptions is allowed and signed by the court."

The error assigned was, that " the court erred in deciding upon the facts above set forth, that said articles were personal property and belonged to the defendant."

*Barbour*, for the plaintiff.

*C. E. Perkins*, for the defendant.

PARK, J.   We do not intend to relax the rule established by repeated decisions during the last seventy years, that the whole case tried in the court below cannot be brought up for review in this court, but only the particular matter complained of in the admission or rejection of evidence, or the rulings of the court upon questions of law arising in the case.   *McDonald* v. *Fisher*, Kirby, 339 ; *Wadsworth* v. *Sanford*, id., 456 ; *Watson* v. *Watson*, 10 Conn., 75 ; *Picket* v. *Allen*, id., 156 ; *Lyme* v. *East Haddam*, 14 id., 394 ; *Sharp* v. *Curtiss*, 15 id., 526 ; *Shelton* v. *Hoadley*, id., 535 ; *Woolf* v. *Chalker*, 31 id., 121.

The counsel for the defendant claims that this case comes under this rule, but we do not so regard it. The question involved in it is, whether certain instruments put up in a slaughter house adapted to the business of slaughtering animals are personal property or real estate. The question applies to each article separately, and whether it is of the one class or the other depends upon the facts applicable to it. One article may be personal property and another real estate ; hence the court was called upon to decide in reference to each article by itself. Suppose the plaintiff had specially re-

quested the court to rule, as matter of law, that the facts in relation to the windlass, as detailed in the finding, showed it to be real estate, and the court had refused so to rule ; it is clear that in a proper proceeding stating the fact the ruling of the court could be reviewed without doing violence to the rule.

Now substantially this was the case here. The plaintiff insisted, as matter of law, that the facts detailed in the motion showed each article to be real estate. The court ruled that each article was personal property. The claim and the ruling applied to each article separately and if in the case supposed the ruling could be reviewed consistently with the rule, so it can be here.

The plaintiff insists that the ruling of the court was wrong in any view of the case ; that if the articles were personal property they were never sold by him, and consequently there should have been a recovery on the second count of the declaration, and if they were a part of the realty then there should have been a recovery on the first count, as the defendant concedes. But there is nothing in the case that goes to show that these articles were not sold by the plaintiff in connection with the real estate, if they were personal property. They may have been regarded by both parties to the sale as appurtenant to the realty, and if they were included in the contract and delivered with the deed the title to them passed to the vendee, as much as it would if they were in fact a part of the realty or sold in a separate contract. Whether they were sold by the plaintiff or not, was a question of fact for the court to determine, and it is not the subject of review by this court.

Were these articles a part of the realty ? This is the only question that we can consider.

The books are full of decided cases upon the subject of fixtures, from the year books down to the present time, and, strange to say, after all the ability that has been displayed upon this subject, no rule can be found of universal application that clearly defines the line where an article loses its legal quality as a chattel and assumes that of real estate.

Property is divided into two great divisions, things personal and things real, and fixtures may be found along the dividing line. They are composed of articles that were once chattels, or such in their nature, and by physical annexation to real property have become accessory to it and parcel of it. Hence in many cases questions of great nicety must arise, where it is difficult to determine with any degree of satisfaction whether a chattel has lost its natural character by annexation to real property or not. Many rules may be found in the books to determine these questions. One rule prevails where the question arises between grantor and grantee, or executor and heir, and another between landlord and tenant, and still another between the executor of a tenant for life and the remainder-man or reversioner, and in such cases the question turns, not upon the character of the annexations and considerations connected therewith, but upon the relation of the party making the annexation to the thing annexed. And even in cases of landlord and tenant a distinction is made between cases where the article is affixed for the purposes of agriculture and those where the same thing is done for purposes of trade or manufacture.

It is not our purpose to go into any extensive examination of the law upon this subject. The great weight of authority is in favor of the doctrine that to constitute a fixture it is necessary that the article should be annexed to the freehold, as the name itself imports; but there is great diversity of opinion in relation to the degree of annexation which is essential for this purpose. *Walker* v. *Sherman*, 20 Wend., 636; *Despatch Line of Packets* v. *Bellamy Manuf. Co.*, 12 N. Hamp., 205; *Farrar* v. *Chauffetete*, 5 Denio, 527; *Farrar* v. *Stackpole*, 6 Greenl., 154; *Gray* v. *Holdship*, 17 Serg. & R., 413; *Gale* v. *Ward*, 14 Mass., 352; *Murdock* v. *Gifford*, 18 N. York, 28; *Swift* v. *Thompson*, 9 Conn., 63; *Baldwin* v. *Walker*, 21 id., 168.

Many cases, both English and American, decide that the annexation must be permanently made, so much so that the article cannot be removed without injury to the freehold. *Taffe* v. *Warnick*, 3 Blackf., 111; *Gale* v. *Ward*, supra;

*Heermance* v. *Verney*, 6 Johns., 5; *Cresson* v. *Stout*, 17 id., 116; *Raymond* v. *White*, 7 Cowen, 319; *Farrar* v. *Chauffetete*, supra. This no doubt is essential in a great majority of cases, but not in all. Mill stones and water wheels used in milling establishments are universally conceded to be a part of the realty; still many of them could be removed without the least injury to the freehold. The fences that are used to separate the lots of farmers are not let into the ground or imbedded in the earth, so as to occasion injury to the soil by their removal, and still no one could doubt that they are fixtures or appurtenant to the realty.

Another class of cases holds that the true test of a fixture is the adaptation of the article to the uses and purposes to which the realty is applied, and no regard is had to the character of the annexation. *Voorhis* v. *Freeman*, 2 Watts & Serg., 116; *Pyle* v. *Pennock*, id., 390; 2 Smith Lead. Cas., (H. & W. ed.,) 216. This rule is too extensive in its application, for it includes all the machinery in mechanical and manufacturing establishments, when the connection to the freehold is made for the purpose of keeping them in position for the successful working of them, but with no design on the part of the owner to constitute them a part of the realty.

It is exceedingly difficult to lay down any rule of universal application upon this subject, but one perhaps that comes nearer to it than any other is, that it is essential to constitute a fixture that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which that part of the building was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a permanent accession to the freehold was intended to be made by the annexation of the article. This rule is in harmony with many of the cases. *Lawton* v. *Salmon*, 1 H. Black., 259; *Murdock* v. *Gifford*, 18 N. York, 28; *Winslow* v. *Merchants Ins. Co.*, 4 Met., 306; *Teaff* v. *Hewitt*, 1 Ohio S. R., 511, 540.

This rule shows the reason why it is held in many cases that it is essential to constitute a fixture that the annexation should be so permanently made that the articles could not be removed without injury to the freehold, for it is easy to see that in a great majority of cases the intent of the party to make a permanent accession to the freehold can only be shown by the character of the annexation, for there is nothing in the nature of the case except this that goes to show the intent, and such an intent to make the annexation a permanent one must affirmatively appear or the article will be deemed to be personal property.

This rule explains the reason why the law is said to be indulgent to a tenant in cases that arise between him and his landlord, and declares that to be a chattel which between grantor and grantee would be held to be real estate. This arises from the fact that when a tenant erects expensive structures for the carrying on of his trade or business, which can be removed without destruction to them or material injury to the freehold, the relation of the tenant to the property in question renders it unreasonable to suppose that he intended to make them a part of the realty belonging to another, thus making a donation of them to the owner of the soil.

This rule was substantially recognized in the case of *Swift* v. *Thompson*, 9 Conn., 63. In that case the question was whether the machinery adapted to the manufacture of cotton cloth in a manufacturing establishment was a part of the realty or not. The case finds that all the machinery could be removed without any injury to the freehold. The court say, in giving their opinion, " It is material here to observe that an important part of the description is that they were thus attached to the building to render them stable, but that they might be removed to any other place without any injury to the freehold. To operate successfully they must be fixed like clocks and many other articles which are clearly personal and movable. We resort then to the criterion established by the rules of the common law. Could this property be re-

moved without injury to the freehold ?    The case finds this
fact.    This then should satisfy us."

The court say that the fact is material and important, that
the articles were attached to the freehold simply to ren-
der them sufficiently stable for the successful working of
them.    Why was this fact material and important ?    Because
it showed for what purpose the annexation of the articles was
made, that it was done with no design to make them a part
of the realty.    It should be observed that there was nothing
in this case that could show that these articles were a part
of the realty but the character of their annexation, and in
order to render that sufficient to show an intent on the part
of the party making it to constitute the articles a part of the
freehold, it was necessary that the articles should be so at
tached to the realty that they could not be removed without
damage to the building.    Judge Church, in giving the opinion
of the court in the case of *Baldwin* v. *Walker*, 21 Conn.,
168, remarks, " that whether the machinery used in a factory
is a part of · the realty or not, depends upon the manner of its
connection with it."    This is undoubtedly true in relation to
articles of that description, as we have seen.

The application of these views to the case under consider-
ation shows all the articles to be personal property with the
exception of the windlass, for they all could be removed
without the least injury to themselves or the building, and
there are no other considerations that show a design to make
them a part of the  realty, unless it be the character of the
articles themselves. They were adapted, it is true, to the uses
and purposes to which  the building was applied at the time
they were attached, but this merely shows that they were
proper subjects to be made a part of the realty, and not that
they were intended so to be.    If the articles had been pon-
derous and exceedingly difficult to be removed, if they had
been of considerable value taken in connection with the
building and of little value as chattels to be removed, if they
had been fitted to the places they occupied and would not be
suited to any other places or building unless specially pre-

pared for them, such considerations might go far to show that they were designed to be a part of the realty.

In relation to the windlass we are inclined to think, as the facts now appear, that it was a part of the realty. The case finds that the ends of it passed through and turned in timbers which were firmly secured to the building. It was as firmly attached as its nature would admit of, if it was designed ever so strongly to be made a part of the permanent structure. It could not have been removed without injury to the building and to the article itself. This shows that it was designed to be a part of the building and there is nothing in the case that tends to rebut the presumption. These facts may, however, be disproved upon another trial and the article shown to be personal property.

We therefore advise the Superior Court that there is manifest error in the judgment complained of, and that it be reversed.

In this opinion the other judges concurred.