[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE' MOTION FOR TEMPORARY INJUNCTION
Plaintiff Norma Fezza has brought this proceeding in which she seeks the continuation of a temporary order issued after a hearing on September 8, 1995, which enjoined defendants Thomas V. McLaughlin, American Financial Group Inc., Joseph Gall, and their agents from
 . . . removing, selling, or disposing of any of the fixtures or other improvements to the real property known as 202 Cherry Street, Milford, Connecticut, including without limitation, carpeting, kitchen and bathroom facilities, partitions, walls, lighting fixtures and heating, ventilating and air conditioning equipment.
On September 13, 1995, the plaintiff filed a bond in the amount of $15,000, as ordered by the Court, to secure the defendants against any damages not exceeding said CT Page 13355 sum, which may accrue by reason of the issuance of the temporary order.
The evidence presented at the hearing on September 19, 1995, is summarized hereinafter. The subject property is a building situated at 202 Cherry Street in Milford, Connecticut. The former tenant of the building was a bank which through a series of transactions prior to 1989 sublet the same to the defendants. Plaintiff Norma Fezza owns the subject property which she and her husband, Michael Fezza, manage. While holding occupancy under a prior sublease during 1989, defendant Joseph Gall arranged for the removal of paneling, as well as for the removal of hollow-core doors from the first and second floor of the premises. Furthermore, defendant Gall arranged for the installation of an interior circular staircase, and new carpeting. In addition, defendant Joseph Gall arranged for the repair of leaks in the roof, as well as for the replacement of approximately ninety per cent of the ceiling tiles on the first and second floors. Defendant Gall replaced floor tiles in the bathroom, and repaired and updated the heating and cooling system.
Defendant Joseph Gall had at least twelve doors specially manufactured and installed on the premises. The hinges for the manufactured doors fit the hinge openings of the original doors which the defendant has kept for the plaintiff. Defendant Gall also created seven standard-sized door openings on the first floor, and manufactured and installed two sectional desks attached to raised platforms, but not attached to the floor.
After the expiration of the renewal of a written lease, dated March 27, 1992, between the plaintiff and defendants Thomas V. McLaughlin and Joseph Gall, the plaintiff served the defendants with a notice to quit the premises. Defendant Joseph Gall vacated the premises and began taking with him certain carpeting, as well as specially manufactured doors, and intends to take the two platform desks which he had installed. Believing that the defendant improperly was removing fixtures and causing damage to the premises, the plaintiff filed an application for the temporary restraining order heard by the Court on September 8, 1995. CT Page 13356
Immediately following the abbreviated hearing on September 8, 1995, the Court issued the aforesaid restraining order.
The essential dispute in this matter is whether the defendants should be allowed to remove the two manufactured platform desks, as well as to continue the removal of the specially manufactured doors, and the field area of the carpeting.[1] The resolution of this controversy depends upon whether the removal of these item is prohibited by the parties' agreement, set out in the written lease, or by being affixed in a permanent way as a fixture to the premises.
The plaintiff points to the language in sections 6(a) and (b) of the parties' lease, signed on March 27, 1992, as supporting her position that the aforesaid desks, doors and carpeting should not be removed.
 [t]he lessee will make at its own expense during the term of this Lease, or any extensions thereof, such repairs to and upon the interior of the building located upon the Leased Premises as may be necessary to maintain the interior of said building, in as good a condition as at the beginning of the Lease,
reasonable wear and tear, damage by fire or other casualty and the elements excepted. (underlining added).
 Id. 6(a)
 [t]he Lessee shall not make any changes, altertins,
additions, or improvements to the Leased Premises without the written consent of the Lessor. (underlining added.)
 Id. 6(b)
In addition, the plaintiff argues that the provisions in the lease which prohibit waste and obligate the defendants to be responsible for damaging the premises provide additional support to their position in this case.
Since the foregoing provisions in the lease do not expressly provide that the installations initially made CT Page 13357 by defendant Joseph Gall prior to the execution of the March 1992 lease become the property of the landlord, the Court finds that the application of the principles of fixtures governs the disposition of this case.
An apt definition of the term "fixtures" was given by our Supreme Court in 1868 in the case of Capen v. Peckham,35 Conn. 88.
 Property is divided into two great divisions, things personal and things real, and fixtures may be found along the dividing line. They are composed of articles that were once chattels, or such in their nature, and by physical annexation to real property have become accessory to it and parcel of it.
 Id. at 93.
The courts recognize a distinction between the rights of tenants and those of a title holder, such as a mortgagee or vendee.
 . . . the law is said to be indulgent to a tenant in cases that arise between him and his landlord, and declares that to be a chattel which between grantor and grantee would be held to be real estate. This arises from the fact that when a tenant erects expensive structures for the carrying on of his trade or business, which can be removed without destruction to them or material injury to the freehold, the relation of the tenant to the property in question renders it unreasonable to suppose that he intended to make them a part of the realty belonging to another, thus making a donation of them to the owner of the soil.
Capen v. Peckham, supra, at 95.
The standard for determining whether a temporary injunction should issue has been articulated in our law to include an examination of the applicant's probable success on the merits, a showing of irreparable loss absent an order requiring the maintaining of the status quo, and a balancing of the equities. Griffin HospitalCT Page 13358v. Commission on Hospitals Health Care, 196 Conn. 451,457-60 (1985). The absence of an adequate legal remedy is a further factor which the court must weigh in determining whether a temporary injunction should issue. WaterburyTeachers Association v. Freedom of InformationCommission, 230 Conn. 441, 446 (1994).
The court finds that the plaintiff is unlikely to prevail on her claim that the installation of the field carpeting, the two sectional desks, and the manufactured doors renders them fixtures. The Court further finds that the removal of the field carpeting, the two sectional desks and the manufactured doors would not cause the plaintiffs to suffer irreparable injury, and that a balancing of the equities does not favor the issuance of temporary injunctive relief.
For the foregoing reasons and upon the foregoing authorities, the plaintiff's Motion for Temporary Injunction is denied.
Furthermore, the court hereby dissolves the temporary restraining order issued on September 8, 1995.
Clarence J. Jones, Judge