HISTORIC DISTRICT COMMISSION OF THE
TOWN OF FAIRFIELD *v.* ANDREW
J. HALL ET AL.
(SC 17658)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued February 16—officially released June 12, 2007

*Linda L. Morkan*, with whom were *Jeffrey J. White* and, on the brief, *John F.X. Peloso, Jr.*, for the appellants (defendants).

*Charles W. Fleischmann*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. In this action, in which the plaintiff, the historic district commission of the town of Fairfield (commission), seeks a declaratory judgment and injunctive relief, the issue before the court is whether a sculpture placed on the front lawn of the defendants' property in the Southport Historic District in the town of Fairfield is a "structure" within the meaning of General Statutes § 7-147a (a),[1] and thus subject to the commission's approval. The sculpture is constructed of concrete and steel rebar, is approximately eighty feet long,

---

[1] General Statutes § 7-147a (a) defines the term "structure" as "any combination of materials, other than a building, which is affixed to the land, and shall include, but not be limited to, signs, fences and walls . . . ."

exceeds six tons in weight and lies on a specially prepared trench filled with more than twenty-one tons of gravel and stone. The defendants, Andrew J. Hall and his wife, Christine Hall, appeal[2] from the judgment of the trial court, which granted the commission's motion for summary judgment and denied the defendants' motion for summary judgment on the ground that the sculpture constitutes a "structure" within the meaning of § 7-147a (a). The defendants claim that the trial court incorrectly determined that the sculpture is a "structure" because (1) the plain language of § 7-147a (a) indicates that the commission's jurisdiction extends only to structures that are physically connected to the land, unlike the sculpture in the present case, (2) the legislative history and the origins of the historic district statutes suggest that the commission's jurisdiction should be narrowly construed, and (3) the court improperly relied on facts not in evidence. We affirm the judgment of the trial court.

The opinion of the trial court sets forth the following undisputed facts. "The commission was established in the town of Fairfield, and the Southport Historic District is one of three historic districts created in that town. The [defendants'] residence and property . . . [lie] within the Southport Historic District.

"In 2003, a sculpture by Anselm Kiefer, a German artist, entitled 'Etroits sont les vaisseaux' ([n]arrow are the vessels), was apparently purchased by a corporation controlled by [Andrew] Hall and shipped to and placed on the lawn of the [defendants'] property. The sculpture is made of concrete and steel rebar. It is approximately eighty feet long and consists of seventeen variably sized wavy sections of concrete, some with protruding rebar

---

[2] The defendants appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

which rest either on the ground, another section, or both. The maximum height is approximately four feet. The smallest 'wave' is approximately four square feet in area and weighs 1200 pounds. The largest is eighteen feet long and weighs approximately five and [one-half] tons. Atop one of the 'waves' is a relatively small replica of an open book made of lead. The sculpture is located entirely on the [defendants'] property between the house and a picket fence and bushes that front [on] Harbor Road."

During the installation process, the defendants "leveled a portion of their sloping lawn by excavating a two foot deep trench approximately [eighty] feet long and four feet wide which was then filled with over [twenty-one] tons of gravel and stone to provide a base for the sculpture and for additional drainage.[3] The sculpture was disassembled at its former location, a storage facility in New Jersey, and transported [on] five large flatbed trucks to the [defendants'] residence and reassembled by means of a crane on the stone and gravel bed. This procedure of reassembly took two days and necessitated the partial closing of Harbor [Road] traffic and the removal of the fence fronting the street."

The defendants initially filed an application for a certificate of appropriateness, seeking permission to install the structure, but withdrew the application before it could be acted on by the commission. Approximately two months later, the defendants installed the sculpture on the front lawn of their property without the commission's permission. Thereafter, the commission commenced this action against the defendants, seeking a judgment declaring that it has jurisdiction over the matter and that the defendants were required to submit an application for a certificate of appropriateness pursuant

---

[3] Andrew Hall also testified that footings were excavated in connection with the installation of the sculpture.

to General Statutes § 7-147d (a).[4] Both parties filed motions for summary judgment. The trial court granted the commission's motion and denied the defendants' motion.[5] The court also granted the commission's motion for injunctive relief and ordered the defendants to remove the sculpture or file an application for a certification of appropriateness within thirty days. This appeal followed.

The defendants claim that the sculpture is not a "structure" under § 7-147a (a) and thus is not subject to the commission's jurisdiction because it is neither "affixed" to the land by direct physical attachment nor embedded in the ground. The commission responds that the sculpture falls within its jurisdiction because it is "affixed" to the land by virtue of its own "multi-ton weight" and the force of gravity. We agree with the commission.

We begin with the standard of review. "Practice Book § 17-49 provides that summary judgment shall be ren-

---

[4] General Statutes § 7-147d (a) provides: "No building or structure shall be erected or altered within an historic district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the historic district commission and approved by said commission."

[5] The defendants filed a motion to reargue the trial court's ruling on the ground that the court did not address the first amendment claim that they had raised in their motion for summary judgment. Counsel for the defendants had explained to the court prior to oral argument that, if the defendants did not prevail on their statutory interpretation claim, they expected the court to address the first amendment claim raised in their third special defense. The trial court granted the motion to reargue but denied the relief requested. The court explained that, because counsel for the defendants had stated repeatedly during oral argument on the summary judgment motions that those motions could and should be decided on nonconstitutional grounds and had chosen not to make a constitutional argument at that time, the defendants had waived the constitutional claim and had failed to establish the elements of the third special defense. The court further concluded that the constitutional question was not ripe for adjudication because the defendants had not submitted—and the commission had not ruled on—an application for a certificate of appropriateness.

dered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Reardon* v. *Windswept Farm, LLC*, 280 Conn. 153, 158, 905 A.2d 1156 (2006).

The issue before the court also "involves a question of statutory interpretation that . . . requires our plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to

its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756, 900 A.2d 1 (2006).

General Statutes § 7-147d (a) provides: "No building or structure shall be erected or altered within an historic district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the historic district commission and approved by said commission." In addition, General Statutes § 7-147a provides in relevant part: "(a) As used in this part . . . 'erected' means constructed, built, installed or enlarged; 'exterior architectural features' means such portion of the exterior of a structure or building as is open to view from a public street, way or place . . . [and] 'structure' means any combination of materials, other than a building, which is affixed to the land, and shall include, but not be limited to, signs, fences and walls . . . ."

The parties do not dispute that the sculpture was "erected" or "installed." Their principal disagreement concerns whether it constitutes a "structure." Section 7-147a (a) does not define the meaning of "affixed to the land," except indirectly by referring to "signs, fences and walls" as examples of objects considered to be "structures." Significantly, the statute contains no limiting language regarding how an object must be "affixed to the land" and, therefore, does not eliminate gravity as a potential means of attachment. There are no other statutory provisions that address the question.

The legislative history of § 7-147a (a) likewise fails to shed any light on the matter. The statutory scheme was amended in 1980 to include the definition of "structure" as part of a comprehensive revision of existing law on historic districts. See Public Acts 1980, No. 80-

314, § 1. Prior to 1980, there was no separate section defining the terms used in § 7-147d (a), which sets forth the requirement for a certificate of appropriateness.[6] Possibly because the 1980 legislation proposed so many technical and substantive changes in the law, there was no discussion regarding the meaning of the phrase, "affixed to the land,"[7] during the committee hearing on the matter or in the course of the legislative debates. In addition, none of the appellate cases cited by the defendants, in which this court used the term "affixed" to describe "direct physical attachment or natural union to another object," involved an object "affixed" to land.[8] We therefore seek guidance from other sources.

General Statutes § 1-1 (a) provides in relevant part: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ."[9] "If a statute or regulation

---

[6] General Statutes (Rev. to 1979) § 7-147d (a) did, however, provide the following definition of "exterior architectural features": "For the purposes of sections 7-147a to 7-147k, inclusive, 'exterior architectural features' shall include such portion of the exterior of a structure as is open to view from a public street, way or place."

[7] As one Senator explained during debate on the matter, the proposed legislation "would clarify and make a broad range of substantive and technical changes in the law governing the formation and operation of historic districts created by municipalities." 23 S. Proc., Pt. 7, 1980 Sess., p. 1977, remarks of Senator Nancy L. Johnson; accord 23 H. Proc., Pt. 19, 1980 Sess., p. 5467, remarks of Representative Joseph J. Farricielli.

[8] See, e.g., *State* v. *Lutters*, 270 Conn. 198, 220 n.7, 853 A.2d 434 (2004) (noting that "the term 'place of business' connotes something affixed to the land"); *Massolini* v. *Driscoll*, 114 Conn. 546, 551, 159 A. 480 (1932) (referring to fact that worker was injured "while affixing calks to a horses' shoes"); *Dore* v. *Babcock*, 74 Conn. 425, 426, 50 A. 1016 (1902) (referring to fact that defendant placed lighted candle on three bundles of dried wood by "affixing it thereto by grease melted and allowed to harden"); *Wooden* v. *Cowles' Executor*, 11 Conn. 292, 300 (1836) (describing how defendant "had in his hands a written paper, called for nails, for the purpose of affixing said paper upon the sign-post . . . and . . . proceeded to nail it upon the post").

[9] For this reason, we prefer to rely on the definition of "affix" in Webster's Third New International Dictionary rather than the following definition of "affix" in Black's Law Dictionary (6th Ed. 1990), which includes the element of permanence: "[to] [f]ix or fasten in any way; to attach physically. . . .

does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." *State* v. *Indrisano*, 228 Conn. 795, 809, 640 A.2d 986 (1994). Webster's Third New International Dictionary contains the following definition of "affix": "to attach physically (as by nails or glue): fasten . . . to attach in any way: connect with . . . ." The definition of the term "fasten" is "to make stable or unwavering: place solidly . . . to cause (parts which are separate) to hold together: make fast and secure . . . to fix firmly or securely in position . . . ." Webster's Third New International Dictionary. "Attach" is similarly defined as "a connection or union, a bond or link to prevent motion or keep one thing with another . . . ."[10] Id. The terms "fix," "fasten," "attach" and "affix" are synonymous and share the common meaning of making an object stay firmly in place. See id.

In light of these definitions, it defies common sense to conclude that a "structure" may be "affixed" directly to the earth by nails, glue, screws, tacks or clamps. Because of the porosity and instability of the soil in its natural condition, structures simply cannot be nailed, glued, screwed, tacked or clamped to the ground in the same manner that two pieces of wood may be fastened together, unless the ground consists of rock. We therefore consider other methods of "affixing" an object to the land.

"In construing a statute, common sense must be used and we must assume that the legislature intended to

To attach, add to, or fasten upon, permanently, as in the case of fixtures annexed to real estate. A thing is deemed to be affixed to land when it is attached to it by the roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws."

[10] This definition of "attach" appears under the definition of "fasten," which Webster's Third New International Dictionary treats as being synonymous with "attach."

accomplish a reasonable and rational result." *Gentry v. Norwalk*, 196 Conn. 596, 606, 494 A.2d 1206 (1985). Mindful of this principle, we conclude that, once the term "affixed to the land" is understood to mean the fixing of an object firmly and securely in position, it is self-evident that objects embedded in the earth, such as posts, stakes and foundations connected to objects rising above the surface, satisfy the statutory requirement because the earth keeps them firmly in place. There also can be no doubt that gravity may serve the similar purpose of "affixing" a very heavy object to land under the statutory provision. This conclusion is supported by the law of other jurisdictions.

The trial court and the parties correctly note that cases that distinguish personal property from fixtures, which are deemed part of the realty, are not precisely on point. A determination as to whether an object is a "fixture" requires consideration of permanency and intent; see *Capen v. Peckham*, 35 Conn. 88, 94 (1868) ("it is essential to constitute a fixture that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which that part of the building was appropriated at the time the annexation was made, and the relation[ship] of the party making it to the property in question, that a *permanent* accession to the freehold was *intended* to be made by the annexation of the article" [emphasis added]); neither of which is relevant in deciding whether an object may be "affixed to the land" under § 7-147a (a). In other words, although the term "affix" is derived from the law of fixtures, a determination that an object is "affixed to the land" under *this* statute does not require consideration of permanency and intent.[11] Nev-

---

[11] This is confirmed by the fact that the language in the original version of § 7-147d specifically referring to stone walls, fences and signs as "appurte-

ertheless, to the extent that the law of fixtures requires a *separate* inquiry into how, and whether, an object is physically attached to the land, it is germane to the present analysis.[12]

Viewed in this way, we note that many jurisdictions have concluded, in the context of fixtures law, that an object may be "affixed to the land" solely by force of gravity. See, e.g., *Rinaldi* v. *Goller*, 48 Cal. 2d 276, 279, 309 P.2d 451 (1957) ("It is settled . . . that a building need not be physically anchored to the land to be considered realty. It may be found to be a fixture though it is secured to the realty by force of gravity alone."); *Seatrain Terminals of California, Inc.* v. *Alameda*, 83 Cal. App. 3d 69, 75, 147 Cal. Rptr. 578 (1978) (objects not attached to land by bolts, screws or similar means may be considered "affixed" to realty when their weight is sufficient to hold them in place by gravity); *General Motors Corp.* v. *Linden*, 20 N.J. Tax 242, 324 (2002) ("[a]n item of personal property not physically attached or fastened to a building or land will be deemed affixed [when] the item is sufficiently large and heavy that gravity alone holds it in place and the building or land has been specially modified or adapted to accommodate

---

nant fixtures"; General Statutes (Cum. Sup. 1961) § 7-147d; was eliminated in 1963; see Public Acts 1963, No. 600, § 2; and was not restored in 1980 when the definitional subsection of § 7-147a was added and walls, fences and signs were cited as examples of a " 'structure' . . . affixed to the land . . . ." Public Acts 1980, No. 80-314, § 1; see also footnote 14 of this opinion.

[12] The defendants argue that when the common law of fixtures changed over time to include factors other than physical annexation of an object to the land, the definition of "affixation" was expanded to include consideration of permanence and intent so as to encourage industry and the transfer of property. They further argue that there is no evidence that the legislature intended to adopt this expanded definition of "affixation" when it amended the historic district statutes in 1980. As we indicated in the preceding discussion, we agree. We examine the law of fixtures in other jurisdictions only with respect to their analysis of whether the objects in those cases were physically attached to the land, which involves a determination unrelated to permanence and intent.

or enclose the item"); *Snedeker* v. *Warring*, 12 N.Y. 170, 175 (1854) ("[a] thing may be as firmly affixed to the land by gravitation as by clamps or cement"); *Seven-Up Bottling Co. of Salem, Inc.* v. *Dept. of Revenue*, 10 Or. Tax 400, 404 (1987) ("large items may be found constructively 'affixed' to the land or buildings merely by virtue of their weight and size"); *John Wagner Associates* v. *Hercules, Inc.*, 797 P.2d 1123, 1128 (Utah App. 1990) (building may be "attached" to realty by force of gravity alone), cert. denied, 815 P.2d 241 (Utah 1991). We therefore conclude that construing the term "structure," as used in § 7-147a (a), to include extremely heavy objects that are "affixed" to the land by gravity and not easily moved because of their substantial weight is consistent with the law of fixtures in other jurisdictions as well as with the common understanding of the term "affixed."

Furthermore, this court has noted that objects need not be embedded in the ground to be deemed physically attached to the land. In *Capen* v. *Peckham*, supra, 35 Conn. 88, we stated in dictum that, although "fences that are used to separate the lots of farmers are not let into the ground or [e]mbedded in the earth, so as to occasion injury to the soil by their removal . . . no one could doubt that they are fixtures or appurtenant to the reality." Id., 94. Accordingly, if fences resting on the earth and held in place by their manner of construction and weight are regarded as attached to the land, then an eighty foot long, multiton sculpture that is secured in position by its enormous size and weight also must be considered attached to the realty.

We do not agree with the defendants that construing the term "affixed" to include attachment by means of gravity would read the term "affixed" out of the statute entirely and "allow historic district commissions to regulate virtually any item placed outdoors including hammocks, birdbaths, swing sets, flower planters, patio

furniture, benches, picnic tables, and even little lawn shrines and statuettes." "Legislative intent is not to be found in an isolated sentence; the whole statute must be considered." *Gentry* v. *Norwalk*, supra, 196 Conn. 606. "In construing [an] act . . . this court makes every part operative and harmonious with every other part insofar as is possible . . . ." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Inland Wetlands Commission*, 266 Conn. 150, 164, 832 A.2d 1 (2003). Although each situation must be evaluated on its own merits, the language of § 7-147a (a) suggests that the legislature did not intend to regulate isolated objects that rest lightly on the surface of the ground and that can be lifted relatively easily and removed for storage or use in another location. Rather, the statute is directed to objects that may be "constructed, built, installed or enlarged" and that reasonably can be regarded as having " 'exterior architectural features' . . . ." General Statutes § 7-147a (a). Indeed, there is simply no comparison between hammocks, flower planters and statuettes, on the one hand, and, on the other hand, the sculpture in the present case, which is eighty feet long and more than four feet high, was delivered to the site by five large flatbed trucks, required the partial closing of Harbor Road, took two days and the assistance of a crane to reassemble and was placed on a trench filled with more than twenty-one tons of gravel and stone to ensure proper stability and drainage. Accordingly, we conclude that the trial court properly granted the commission's motion for summary judgment on the ground that the multiton sculpture on the defendants' front lawn constituted a "structure" and thus was subject to the commission's jurisdiction because it was "affixed to the land" by gravity.[13]

---

[13] Because our conclusion does not require a comparison of the sculpture with a traditional stone wall, which qualifies as a "structure" under § 7-147a (a), it is unnecessary to address the defendants' claim that the trial court improperly relied on facts not in evidence in determining that the sculpture is a structure on the basis that the sculpture, like a traditional stone wall,

The defendants contend that the legislative history and origins of the historic district statutes suggest that the commission's jurisdiction should be narrowly construed. They argue that the legislature's original grant of jurisdiction to historic district commissions in 1961 to review buildings or structures and their appurtenant fixtures was broad, that commission jurisdiction was curtailed in 1963 in response to public opposition and that its former jurisdiction was only partially restored in 1980 when the legislature enacted a comprehensive revision of the statutory scheme.[14] The defendants also maintain that a strict interpretation is required because the historic district statutory scheme is in derogation of an individual's common-law right to use his property as he sees fit. The defendants therefore argue that the meaning of the term "affixed" should not be expanded

___

is "affixed" to the ground by gravity alone. The defendants also concede that, inasmuch as the issue raised on appeal presents a question of law, this court must make its own independent determination of the meaning and scope of § 7-147a (a).

[14] The defendants specifically note that Public Acts 1961, No. 430, § 4, codified as amended at General Statutes § 7-147d, provided in relevant part that "[n]o building or structure *including stone walls, fences, signs, light fixtures, steps and paving or other appurtenant fixtures* shall be erected, altered, restored, moved or demolished within an historic district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the commission and approved by said commission. . . ." (Emphasis added.) The defendants also note that, although the original statute did not define structures, each of the examples in the statute was considered to be an appurtenant fixture. In 1963, the language was revised as follows to eliminate all previous references to appurtenant fixtures: "No building or structure shall be erected, altered, restored, moved or demolished within an historic district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the commission and approved by said commission." Public Acts 1963, No. 600, § 2, codified at General Statutes (1963 Cum. Sup.) § 7-147d. In 1980, a definitional section was added that restored some, but not all, of the original language: "As used in this act . . . 'structure' means any combination of materials, other than a building, which is affixed to the land, and shall include, but not be limited to, signs, fences and walls . . . ." Public Acts 1980, No. 80-314, § 1, codified as amended at General Statutes § 7-147a (a).

from its common usage of physical attachment or natural connection to include objects affixed to the land by force of gravity.

We agree with the defendants that the relevant language was amended between 1961, when legislation first was enacted to establish historic districts and historic district commissions, and 1980, when the definitional section was added to the statutory scheme. It requires an intellectual leap of great proportion, however, to conclude from this history that the legislature did not intend the definition of "structure" to include objects affixed to the land by gravity. A more accurate conclusion would be that the legislature, for unknown reasons, simply did not discuss or elaborate on the meaning of the phrase "affixed to the land" during committee hearings or debate on the floor of the House or Senate when it adopted the 1980 amendments. Furthermore, as we stated previously in this opinion, we do not agree that construing the term "affixed to the land" to include gravity as a means of attachment has expanded the meaning of "affixed" beyond its common usage. We therefore conclude that the defendants' claim is unpersuasive.

The judgment is affirmed.

In this opinion the other justices concurred.