******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THOMAS G. STONE III *v.* EAST COAST SWAPPERS, LLC
## (SC 20382)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 42-110g (d)), "[i]n any action brought by a person"
under the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a
et seq.), "the court may award . . . reasonable attorneys' fees based
on the work reasonably performed by an attorney and not on the amount
of recovery."

The plaintiff sought to recover damages and attorney's fees from the defen-
dant, a motor vehicle repair shop, for violation of CUTPA in connection
with the installation of a modified engine in a car owned by K, the
plaintiff's son-in-law, and financed through W Co., a third-party automo-
bile finance company. The plaintiff had loaned K the money to pay the
defendant for the requested work, but the engine was never installed
because K did not want to pay for certain additional costs that the
defendant indicated were necessary for installation. K subsequently
failed to repay the loan, and the plaintiff obtained a judgment against
K and secured a lien on the car that was subsequent in right only to
that of W Co. The plaintiff informed the defendant of his status as a
second position lienholder on the car's title. Subsequently, the defendant,
which had retained the car, sold it at an auction. The plaintiff alleged
that the defendant had violated CUTPA by refusing to perform the work
that had been paid for and by failing to provide the plaintiff, a lienholder,
with statutory notice of the auction. The trial court concluded that the
plaintiff had proven a CUTPA violation and awarded him damages. The
court also concluded, however, that the plaintiff had not proven the
evil motive or malice necessary to award punitive damages, and it exer-
cised its discretion by finding that the plaintiff was not entitled to
attorney's fees. The plaintiff appealed from the trial court's judgment
to the Appellate Court, claiming that the trial court improperly had
declined to award him attorney's fees. The Appellate Court affirmed the
trial court's judgment, and the plaintiff, on the granting of certification,
appealed to this court. *Held*:

1. The plaintiff could not prevail on his claim that this court should adopt
a presumption pursuant to which a plaintiff prevailing in a CUTPA action
should ordinarily recover attorney's fees under § 42-110g (d) unless
special circumstances would render such an award unjust: there was
no language in § 42-110g (d) or legislative history indicating that the
legislature intended a presumption in favor of attorney's fees, this court
has previously held that an award of attorney's fees under CUTPA is
discretionary, and this court declined to import such a presumption into
CUTPA when the legislature did not choose to include one; moreover,
the legislature has directed that the courts of this state, in interpreting
the provisions of CUTPA, shall be guided by interpretations given by
the Federal Trade Commission in interpreting the federal analogue to
CUTPA, and that commission has not adopted a presumption in favor
of awarding attorney's fees for violations of the federal analogue.

2. The Appellate Court incorrectly determined that the trial court had not
abused its discretion when it declined to award the plaintiff attorney's
fees under the test applicable to awarding punitive damages under
CUTPA: the trial court failed to recognize the different purposes that
attorney's fees and punitive damages serve under CUTPA, and, by identi-
fying the more demanding test for awarding punitive damages, namely,
intentional, wanton, malicious, or evil conduct, as its rationale for not
awarding attorney's fees under § 42-110g (d), the trial court improperly
required a more demanding showing from the plaintiff, which was at
odds with the purpose of the attorney's fees provision in CUTPA, that
is, to foster the use of private attorneys in vindicating the public goal
of ferreting out unfair trade practices by commercial actors in connec-
tion with consumer transactions; accordingly, the case was remanded for

reconsideration of the plaintiff's request for an award of attorney's fees.

Argued June 1—officially released December 11, 2020*

*Procedural History*

Action to recover damages for, inter alia, violation of the Connecticut Unfair Trade Practices Act, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Huddleston, J.*, granted in part the defendant's motion to strike; thereafter, the case was tried to the court, *Noble, J.*; judgment for the plaintiff, from which the plaintiff appealed to the Appellate Court, *Alvord*, *Bright* and *Norcott, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*William J. O'Sullivan*, with whom, on the brief, was *Michelle M. Seery*, for the appellant (plaintiff).

*Mario Cerame*, with whom, on the brief, was *Timothy Brignole*, for the appellee (defendant).

*J.L. Pottenger, Jr.*, *Jeffrey Gentes*, and *Sophie Laing* and *Stefanie Ostrowski*, law student interns, filed a brief for the Housing Clinic of the Jerome N. Frank Legal Services Organization et al. as amici curiae.

*Opinion*

McDONALD, J. This certified appeal requires us to consider the circumstances under which a plaintiff may be denied attorney's fees under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The plaintiff, Thomas G. Stone III, appeals from the judgment of the Appellate Court affirming the judgment of the trial court, which found that the defendant, East Coast Swappers, LLC, had violated CUTPA and awarded the plaintiff compensatory damages, but declined to award punitive damages or attorney's fees. See *Stone* v. *East Coast Swappers, LLC*, 191 Conn. App. 63, 65, 213 A.3d 499 (2019). The plaintiff contends that we should adopt a presumption whereby a plaintiff prevailing in a CUTPA action should ordinarily recover attorney's fees under General Statutes § 42-110g (d) unless special circumstances would render such an award unjust. Regardless of whether we adopt such a presumption, the plaintiff contends that the Appellate Court incorrectly concluded that the trial court had not abused its discretion when it failed to award the plaintiff attorney's fees. Although we decline to adopt the plaintiff's suggested presumption, we conclude that the trial court abused its discretion.

The Appellate Court's decision sets forth a detailed recitation of the facts as found by the trial court; see id., 65–71; which we summarize in relevant part. Patrick Keithan, who was the plaintiff's son-in-law at the time, purchased a 2008 Mitsubishi Lancer Evolution from a car dealership in Georgia, where he was stationed for his military service. He financed the purchase, in part, through a loan from Wachovia Dealer Services, Inc.[1]

Thereafter, Keithan experienced performance issues with the car's engine. He towed the car from Georgia to Windsor Locks, Connecticut, where the defendant, a motor vehicle repair shop, was located. The defendant initially replaced the car's turbocharger, but the engine still experienced performance issues. Keithan returned to Georgia to fulfill his military service obligations and left the car with the defendant. Keithan ultimately decided to have the defendant install a Buschur Racing short block.[2] A co-owner of the defendant, Paul Scott, drafted an estimate for this work, which he sent to Keithan. The estimate referenced the purchase of the Buschur Racing short block and its installation and provided an estimated cost of more than $9000.

The plaintiff loaned Keithan the money to pay the defendant. A promissory note for the loan was executed by Keithan and his wife, the plaintiff's daughter. Keithan's wife subsequently sent a check to the defendant for the contracted amount.

Upon receipt of the payment, the defendant shipped the car's engine to Buschur Racing, which performed the requested work on the engine and returned the

modified engine to the defendant. As Scott prepared the modified engine for installation, his foreman informed him that additional parts were needed to install the engine. The foreman discovered that these parts were damaged when he took the original engine apart to prepare to send it to Buschur Racing. A request for additional funding for the parts was communicated to Keithan, but he did not want to pay the extra money, and the modified engine was never installed in the car.[3] The car remained in the defendant's possession.

Keithan never repaid the plaintiff any portion of the loan. Consequently, the plaintiff attempted to obtain title to the car by filing a title application with the motor vehicle division of the Georgia Department of Revenue. He was unsuccessful because the title application required Keithan's signature, which was missing.

The plaintiff subsequently traveled from his residence in Maryland to the defendant's location and asked to see the car. Scott refused to allow the plaintiff to look at the car or the modified engine and informed him that the engine had never been reinstalled and that Keithan had refused to pay for any of the extra work or parts involved. Thereafter, another co-owner of the defendant sent a letter to Keithan, in which she indicated that she had been contacted by the plaintiff. The letter referenced the sum of $14,151.71 being owed to the defendant, which represented the costs of additional shipping, engine parts, and storage over the previous year.

The plaintiff subsequently filed an action against Keithan in Maryland and obtained a judgment in the amount of $10,348. This judgment permitted the plaintiff to eventually secure a lien on the car subsequent in right to that of Wells Fargo Auto Finance. See footnote 1 of this opinion. The lien was reflected in a certificate of title, which was issued by the Georgia Department of Revenue.

Thereafter, the defendant filed a "Notice of Intent to Sell" or an "Artificer's Lien"[4] with the Connecticut Department of Motor Vehicles, claiming a lien of $1792. The Department of Motor Vehicles issued the defendant an "Affidavit of Compliance and Ownership Transfer" for use in providing valid title to a purchaser for a vehicle subject to an artificer's lien.

Extensive communications took place between the plaintiff, the plaintiff's wife, and the defendant's owners regarding the plaintiff's obtaining the car in satisfaction of his lien. During these communications, the plaintiff informed the defendant that he had secured his status as a second position lienholder on the Georgia title. The plaintiff, however, had not provided the defendant with a copy of the new Georgia title.

Keithan filed for bankruptcy protection in Maryland and secured the discharge of the plaintiff's judgment.

Wells Fargo's security interest was identified as $10,700 at the time of the bankruptcy petition. The bankruptcy petition, which was obtained by the defendant's counsel, identified the plaintiff as an unsecured creditor.

Thereafter, both parties retained counsel who exchanged communications regarding their clients' respective claims related to the vehicle. In September, 2013, the plaintiff commenced the underlying action against the defendant, alleging, among other things, that the defendant had violated CUTPA.[5] In November, 2013, the defendant, on the advice of its counsel, sold the car at an auction for $19,000. Although he had provided notice of the auction to Keithan and Wells Fargo and published notice in a local newspaper, Scott, on behalf of the defendant, did not provide notice of the auction to the plaintiff.

The record reveals the following procedural history. In December, 2016, the plaintiff filed the operative, single count complaint, alleging that the defendant had violated CUTPA by refusing to perform the work that had been paid for—namely, failing to install the modified engine in the car—and by failing to provide the plaintiff, a lienholder, with statutory notice of the auction.[6] The case was tried to the court in January, 2017.

The trial court issued a memorandum of decision in which it concluded that the plaintiff "has proven a violation of CUTPA[7] [but] has not proven the evil motive or malice necessary to award punitive damages, and [the trial court] exercise[d] its discretion by finding that the plaintiff is not entitled to an award of attorney's fees. Damages [were] awarded in the amount of $8300." (Footnote added.)

In declining to award either punitive damages or attorney's fees, the court reasoned: "The court finds as a matter of fact that the plaintiff has not proven that [the defendant's] actions constituted a reckless indifference to the rights of [the plaintiff], an intentional and wanton violation of his rights, malice or evil. [The defendant] had been given an application for a title listing [the plaintiff] as a second position lienholder but had never been provided with the actual title. [The defendant] did make the effort to review Keithan's bankruptcy filing, which listed [the plaintiff] as an unsecured creditor. [The defendant] did consult with counsel before selling the vehicle at auction. The court cannot find, therefore, that [the defendant's] actions warrant punitive damages. For similar reasons, the court exercises its discretion and does not award attorney's fees to the plaintiff."

The plaintiff appealed from the trial court's judgment to the Appellate Court, arguing that the trial court erred in failing to award him attorney's fees. While the appeal was pending, the plaintiff filed a motion requesting that the trial court articulate the factual and legal bases for

its decision not to award attorney's fees. Specifically, the plaintiff requested that the court clarify its use of the phrase "[f]or similar reasons" in its memorandum of decision. The trial court issued an articulation, explaining: "The use of the phrase 'similar reasons' was meant to signify that the court relied on the *same* reasons enumerated in the preceding sentences, to wit, '[the defendant] had been given an application for a title listing [the plaintiff] as a second position lienholder but had never been provided with the actual title. [The defendant] did make the effort to review Keithan's bankruptcy filing, which listed [the plaintiff] as an unsecured creditor. [The defendant] did consult with counsel before selling the vehicle at auction.' " (Emphasis in original.)

The Appellate Court rejected the plaintiff's contention that it should recognize a rebuttable presumption whereby a prevailing plaintiff in a CUTPA action "should ordinarily recover attorney's fees unless special circumstances would render such an award unjust." (Internal quotation marks omitted.) *Stone* v. *East Coast Swappers, LLC*, supra, 191 Conn. App. 72. The Appellate Court reasoned that the use of the word "may" in § 42-110g (d) indicates that the statute does not provide for a mandatory award of fees; rather, the court has discretion to award attorney's fees. (Internal quotation marks omitted.) Id., 74. It also reasoned that such a rebuttable presumption would result in a loss of the trial court's statutory discretion. Id., 74–75. The Appellate Court also rejected the plaintiff's contention that the trial court abused its discretion in declining to award attorney's fees, reasoning that, "[a]lthough the [trial] court relied on the same factual findings in its decision not to award punitive damages, nothing in the court's memorandum of decision or articulation suggests that the court improperly required the plaintiff to show, in order to be entitled to recover attorney's fees, that the defendant acted with malice, reckless disregard, or evil intent." Id., 76.

We thereafter granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the trial court did not abuse its discretion when it denied an award of attorney's fees to the plaintiff after the plaintiff prevailed on his claim under [CUTPA]?" *Stone* v. *East Coast Swappers, LLC*, 333 Conn. 924, 217 A.3d 993 (2019).

On appeal, the plaintiff contends that the Appellate Court incorrectly focused on the phrase "may award" in § 42-110g (d) in isolation and should have construed CUTPA's fee shifting provision broadly in favor of the plaintiff, as one whom the legislature intended to benefit, and in light of CUTPA's remedial purpose to encourage attorneys to accept and litigate unfair trade practices claims. The plaintiff further contends that we

should take this opportunity to emphasize that "a decision whether to award [attorney's] fees under CUTPA is distinct from the decision regarding punitive damages and requires a distinct analysis . . . ." In particular, he argues that we should adopt a presumption whereby a prevailing plaintiff in a CUTPA action should ordinarily receive a fee award unless a trial court finds that special circumstances would render a fee award unjust. Regardless of whether we adopt such a presumption, the plaintiff also contends that the Appellate Court incorrectly concluded that the trial court did not abuse its discretion because the trial court required proof of reckless disregard or malice as a prerequisite to an award of attorney's fees.

The defendant contends that the plaintiff's construction of "may award" in § 42-110g (d) is at odds with the plain meaning of the statute and there is no basis in the legislative history of the statute to conclude that this court should adopt a presumption in favor of awarding attorney's fees to a prevailing party. The defendant also contends that the trial court did not abuse its discretion in declining to award attorney's fees because, affording the trial court every reasonable presumption in favor of upholding the ruling, it simply found the plaintiff's arguments for fees unavailing.

Whether the phrase "may award" in § 42-110g (d) establishes a presumption that a prevailing plaintiff should ordinarily recover attorney's fees in a CUTPA action is a question of statutory interpretation over which our review is plenary. See, e.g., *Ulbrich* v. *Groth*, 310 Conn. 375, 448, 78 A.3d 76 (2013). "In making such determinations, we are guided by fundamental principles of statutory construction." *In re Matthew F.*, 297 Conn. 673, 688, 4 A.3d 248 (2010), overruled in part on other grounds by *In re Jose B.*, 303 Conn. 569, 34 A.3d 975 (2012); see General Statutes § 1-2z. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008). "[I]t is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Emphasis omitted; internal quotation marks omitted.) *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 403–404, 999 A.2d 682 (2010). "Legislative intent is not to be found in an isolated sentence; the whole statute must be considered." (Internal quotation marks omitted.) *Historic District Commission* v. *Hall*, 282 Conn. 672, 684, 923 A.2d 726 (2007).

We are mindful that CUTPA, as a remedial act, is "construed liberally in an effort to effectuate its public policy goals." (Internal quotation marks omitted.) *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 158, 645 A.2d 505 (1994);

see also General Statutes § 42-110b (d). CUTPA's primary goal is "eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices." (Internal quotation marks omitted.) *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 616–17, 440 A.2d 810 (1981). As a result, "[t]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law. The ability to recover both [attorney's] fees . . . and punitive damages . . . enhances the private CUTPA remedy and serves to encourage private CUTPA litigation." (Citations omitted; footnote omitted.) Id., 617.

We begin with the text of the statute. Section 42-110g (d) provides in relevant part: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ." The term "may award" is not defined in § 42-110g; nor is it defined in the provision setting forth the definitions used within CUTPA, § 42-110a.

We have previously explained that "the word 'may' imports permissive conduct and the conferral of discretion. . . . Only when the context of legislation permits such interpretation and if the interpretation is necessary to make a legislative enactment effective to carry out its purposes, should the word 'may' be interpreted as mandatory rather than directory." (Citations omitted.) *State* v. *Bletsch*, 281 Conn. 5, 17–18, 912 A.2d 992 (2007). Section 1-2z directs us to consider related statutory provisions to determine whether the text is ambiguous. Accordingly, we look to a related subsection of § 42-110g to put the legislature's use of "may award" in subsection (d) in context. See, e.g., *Studer* v. *Studer*, 320 Conn. 483, 489, 131 A.3d 240 (2016) ("[i]n interpreting a statute, [r]elated statutory provisions . . . often provide guidance in determining the meaning of a particular word" (internal quotation marks omitted)). Section 42-110g (a), CUTPA's punitive damages provision, provides in relevant part: "Any person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. . . . The court may, in its discretion, award punitive damages . . . ."

We find it significant that the legislature employed the term "may award" in the attorney's fees provision; General Statutes § 42-110g (d); but employed "may, *in its discretion,* award" in the punitive damages provision. (Emphasis added.) General Statutes § 42-110g (a). The addition of the phrase "in its discretion" in subsection (a) renders the legislature's use of "may award" in subsection (d) ambiguous because it demonstrates

that the legislature did not use "may award" uniformly in § 42-110g. Cf. *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008) ("[t]he use of the different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings" (internal quotation marks omitted)). We conclude that "may award" in § 42-110g (d) is ambiguous because, when read in context, it is susceptible to more than one reasonable interpretation. See, e.g., *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 303, 140 A.3d 950 (2016).

A broader understanding of the attorney's fees and punitive damages provisions of CUTPA is foundational to our analysis. We have previously explained the distinction between attorney's fees and punitive damages under CUTPA: "Section 42-110g (a) expressly authorizes the trial court to award punitive damages in addition to the award of attorney's fees authorized by § 42-110g (d). Nothing in the language of the statute suggests that punitive damages are the same as attorney's fees, consistent with the common-law rule. If the legislature had intended to impose such a limitation, it presumably would have done so either by authorizing the trial court to award double attorney's fees or by authorizing it to award double punitive damages. The fact that the legislature enacted two distinct provisions indicates that it contemplated two distinct types of awards. See *Mead* v. *Burns*, 199 Conn. 651, 666 n.8, 509 A.2d 11 (1986) ('[when] CUTPA applies, it permits a recovery of punitive damages and attorney's fees that the common law does not ordinarily permit'); *Hinchliffe* v. *American Motors Corp.*, [supra, 184 Conn. 617] ('The plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law. The ability to recover both [attorney's] fees . . . and punitive damages . . . enhances the private CUTPA remedy and serves to encourage private CUTPA litigation.' . . .)." (Emphasis omitted; footnote omitted.) *Ulbrich* v. *Groth*, supra, 310 Conn. 449–50.

This distinction exists because, unlike the purpose of permitting an award of attorney's fees—to foster the use of private attorneys in vindicating the public goal of ferreting out unfair trade practices in consumer transactions by commercial actors generally—the purposes of punitive damages are focused on deterrence and punishment of particular commercial actors. See id., 455 n.64; see also *Hylton* v. *Gunter*, 313 Conn. 472, 486 n.14, 97 A.3d 970 (2014) (punitive damages under CUTPA are distinct from common-law punitive damages because "they are not intended merely to compensate the plaintiff for the harm caused by the defendant" (internal quotation marks omitted)). As such, punitive damages under CUTPA are not limited to the measure of

common-law punitive damages, and the most important factor in measuring punitive damages under CUTPA is the "reprehensibility of a defendant's conduct . . . ." *Ulbrich* v. *Groth*, supra, 310 Conn. 455. The Appellate Court has similarly explained that, under CUTPA, a plaintiff's "entitlement to recover attorney's fees stands on a different footing" than his or her entitlement to punitive damages. *New England Custom Concrete, LLC* v. *Carbone*, 102 Conn. App. 652, 667, 927 A.2d 333 (2007). In short, the analysis for awarding attorney's fees is distinct from the analysis for awarding punitive damages.

CUTPA's legislative history underscores the purpose of the attorney's fees provision. In 1976, the legislature amended the attorney's fees provision to strengthen CUTPA's mechanism of encouraging private litigation by removing the court's authority to award attorney's fees to the prevailing party and providing instead for fee awards only to prevailing plaintiffs.[8] See Public Acts 1976, No. 76-303, § 3; see also *Gill* v. *Petrazzuoli Bros., Inc.*, 10 Conn. App. 22, 32, 521 A.2d 212 (1987). Representative Raymond C. Ferrari remarked: "The purpose of this act is to stop unfair or deceptive practices. The only way to accomplish that effectively is to encourage litigation by private parties. The only way to encourage that litigation in the public interest is to provide only for attorney's fees in the case for plaintiffs." 19 H.R. Proc., Pt. 6, 1976 Sess., p. 2191. Similarly, Senator Louis Ciccarello explained: "[B]oth the [Department] of Consumer Protection and the Attorney General's [O]ffice and private attorneys are all of the opinion that in order to protect consumers of the [s]tate that plaintiff's fees are extremely necessary. The reason for, there is a lot of hesitancy in bringing [an action] of this nature and in order to pursue this sort of private attorney general method, you have to have plaintiff's attorney's fees. I think it's fair and I think it should also be pointed out that reasonable attorney's fees are granted only upon discretion of the court, so therefore, a plaintiff may not be able to receive any fees whatsoever." 19 S. Proc., Pt. 6, 1976 Sess., p. 2278.

The attorney's fees provision is integral to effectuating CUTPA's policy of encouraging litigants to act as private attorneys general. It serves to "encourage attorneys to accept and litigate CUTPA cases. CUTPA cases, however, may entail long hours with little likelihood of an award that will cover reasonable expenses. For this reason . . . § 42-110g (d) offers an attorney who accepts a CUTPA case the prospect of recovering reasonable fees and costs." *Gill* v. *Petrazzuoli Bros., Inc.*, supra, 10 Conn. App. 33. The present case, in which the trial court awarded $8300 in compensatory damages, demonstrates the importance of the attorney's fees provision. If attorneys did not have the prospect of recovering fees, there would be little incentive for them to litigate cases with small damages at stake, even if the

unfair trade practice conduct was substantial. See *Freeman* v. *A Better Way Wholesale Autos, Inc.*, 191 Conn. App. 110, 132, 213 A.3d 542 (2019) ("[t]he availability of statutory attorney's fees under CUTPA serves both to deter unfair trade practices and to *compensate attorneys for taking on small cases* to enforce the public policy of protecting consumers from unfair and deceptive conduct" (emphasis added)). Thus, a court's inquiry into whether to award attorney's fees is largely distinct from whether to award punitive damages because fees seek to encourage attorneys to take on CUTPA litigation, whereas punitive damages seek to address reprehensible conduct.

Having established that a trial court's determination of whether to award attorney's fees is distinct from the determination of whether to award punitive damages, the question that remains is whether we should adopt a presumption in favor of awarding attorney's fees to a prevailing plaintiff in a CUTPA action. There is no language in § 42-110g (d) and no legislative history indicating that the legislature intended a presumption in favor of attorney's fees. As this court has previously stated, "[a]warding . . . attorney's fees under CUTPA is discretionary . . . ." (Citations omitted.) *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987); see also *Woronecki* v. *Trappe*, 228 Conn. 574, 580 n.7, 637 A.2d 783 (1994); *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 590, 552 A.2d 1207 (1989). The legislative history of § 42-110g (d) also makes clear that legislators found it significant that "reasonable attorney's fees are granted only upon *discretion of the court*, so therefore, *a plaintiff may not be able to receive any fees whatsoever*." (Emphasis added.) 19 S. Proc., supra, p. 2278, remarks of Senator Ciccarello.

Our legislature has employed presumptions in other statutes and has chosen not to do so here. See, e.g., General Statutes § 5-145a (hypertension and heart disease presumed to have been suffered in performance of certain personnel's duty); General Statutes § 46b-56b (presumption that it is in best interest of child to be in custody of parent); General Statutes § 52-183 (presumption of agency in motor vehicle operation); General Statutes § 52-470 (d) (rebuttable presumption of delay without good cause for habeas petitions filed outside time limits). "Our case law is clear . . . that when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent and to know of all other existing statutes . . . ." (Internal quotation marks omitted.) *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 155, 12 A.3d 948 (2011); see also *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183 ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted)), cert. denied, 568 U.S. 940,

133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). We decline to import such a presumption into CUTPA's statutory framework when the legislature did not choose to include one.

Moreover, we are mindful that, in interpreting the statutory provisions of CUTPA, "[t]he legislature has directed that 'courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. [§] 45 (a) (1)).' General Statutes § 42-110b (b)." *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192 Conn. 558, 567, 473 A.2d 1185 (1984). Although a small number of states have mandated an award of attorney's fees to prevailing plaintiffs; see, e.g., *Skeer* v. *EMK Motors, Inc.*, 187 N.J. Super. 465, 469, 473, 455 A.2d 508 (App. Div. 1982) (under New Jersey law, award of attorney's fees to prevailing consumer is mandatory under provisions of state Consumer Fraud Act); *Woods* v. *Littleton*, 554 S.W.2d 662, 669 (Tex. 1977) (under Texas law, "the consumer who proves all the elements required to recover actual monetary damages shall recover three times the actual monetary damages and, supported by adequate proof, reasonable [attorney's] fees and court costs"); our research has not revealed, and the plaintiff does not contend, that the Federal Trade Commission has adopted a presumption similar to the one the plaintiff asks us to adopt.

The plaintiff nonetheless contends that we should adopt a presumption because claims brought under Title VII of the Civil Rights Act and similar federal statutes contain a similar fee shifting provision—"may allow"—and the United States Supreme Court has held that a prevailing plaintiff "should ordinarily recover [attorney's fees] unless special circumstances would render such an award unjust." (Internal quotation marks omitted.) *Christiansburg Garment Co.* v. *Equal Employment Opportunity Commission*, 434 U.S. 412, 416–17, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978). The plaintiff contends that the rationale supporting the presumption in Title VII and similar federal statutes applies with equal force to fee awards under CUTPA, given that CUTPA's purpose to encourage private attorney general actions is like that of Title VII and similar federal statutes. As the Appellate Court noted, however, Title VII protects civil rights, which hold an especially valued status in our law. See, e.g., *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968) (plaintiff who brings civil rights action is "vindicating a policy that Congress considered of the highest priority"). Although we do not diminish the significance or importance of deterring unfair or deceptive trade practices, the plaintiff does not identify any authority that suggests we should put protection from unfair trade practices on the same plane as vindicating violations of civil rights. Two of the cases the

plaintiff relies on are also distinguishable from the present case because, unlike in CUTPA litigation, those cases involve circumstances in which the prevailing party did not otherwise have monetary recovery available. See *Christiansburg Garment Co.* v. *Equal Employment Opportunity Commission*, supra, 419, 421 (prevailing defendant should have possibility of recovering its expenses in resisting groundless action); *Newman* v. *Piggie Park Enterprises, Inc.*, supra, 402 (explaining that attorney's fees are significant because prevailing plaintiff is not otherwise entitled to damages). Accordingly, we decline to adopt a presumption in favor of attorney's fees under § 42-110g (d).

Although we do not agree with the plaintiff that there is an established statutory presumption in favor of an award of attorney's fees, a trial court should be able to articulate appropriate reasons why it would not exercise its discretion to award attorney's fees in furtherance of CUTPA's legislative objectives. Moreover, in exercising its discretion, a trial court must consider the purpose of CUTPA attorney's fees when deciding whether a prevailing plaintiff should be awarded such fees. See, e.g., *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 575, 620 A.2d 118 (1993) (trial court's exercise of discretion "imports something more than leeway in decision making and should be *exercised in conformity with the spirit of the law* and should not impede or defeat the ends of substantial justice" (emphasis added; internal quotation marks omitted)).

Applying these principles to the facts of this case, we are mindful that "[a]warding . . . attorney's fees under CUTPA is discretionary; General Statutes § 42-110g [d] . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Footnote omitted; internal quotation marks omitted.) *Ulbrich* v. *Groth*, supra, 310 Conn. 446. As we have explained, however, "[a] court's discretion must be informed by the policies that the relevant statute is intended to advance." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 55, 74 A.3d 1212 (2013). Indeed, a statute's purpose is "a paramount factor for the trial court to consider" when exercising its discretion. Id., 59.

Here, the trial court failed to recognize the difference between statutory punitive damages and common-law punitive damages,[9] and failed to recognize the different purposes that attorney's fees and punitive damages serve under CUTPA. In its memorandum of decision, the trial court stated: "The court finds as a matter of fact that the plaintiff has not proven that [the defendant's] actions constituted a *reckless indifference* to the rights of [the plaintiff], an *intentional and wanton* violation

of his rights, *malice* or *evil*. . . . The court cannot find, therefore, that [the defendant's] actions warrant punitive damages. *For similar reasons*, the court exercises its discretion and does not award attorney's fees to the plaintiff." (Emphasis added.) When asked to articulate what it meant by "similar reasons," the trial court explained that "[t]he use of the phrase 'similar reasons' was meant to signify that the court relied on the *same* reasons enumerated in the preceding sentences . . . ." (Emphasis in original.) The court did not consider the remedial policy objectives of § 42-110g (d). Rather, the court identified the more demanding test for awarding punitive damages—intentional, wanton, malicious, or evil conduct—as its rationale for not awarding attorney's fees. It improperly required a more demanding showing from the plaintiff, which is at odds with the purpose of the attorney's fees provision of CUTPA. To interpret the attorney's fees provision so narrowly undermines the legislative intent because it neither enhances the private CUTPA remedy nor encourages private CUTPA litigation. See, e.g., *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 617.

The defendant contends that the trial court did not require intentional, wanton, malicious, or evil conduct. The defendant argues that affording the trial court every reasonable presumption in favor of upholding the ruling demonstrates that the trial court simply was not persuaded that the plaintiff was entitled to attorney's fees. We disagree. After initially stating that, "[f]or similar reasons," it was not awarding the plaintiff attorney's fees, the trial court removed any doubt that it was applying the punitive damages standard in its articulation, explaining: "The use of the phrase 'similar reasons' was meant to signify that the court relied on the *same* reasons enumerated in the preceding sentences . . . ." (Emphasis in original.) Those reasons in the preceding sentences were solely directed at determining whether the defendant's actions constituted a reckless indifference to the rights of the plaintiff, an intentional and wanton violation of his rights, malice or evil, in other words, a determination as to whether the defendant's conduct warranted punitive damages. We take the trial court at its word that it relied on the same factors to deny attorney's fees as it did to deny punitive damages. For the reasons set forth in this opinion, applying that standard to the determination of whether to award attorney's fees constituted an abuse of discretion. Cf. *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, 308 Conn. 1, 19, 60 A.3d 222 (2013) (trial court abused discretion because it failed to apply proper legal test); *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 367, 999 A.2d 721 (2010) ("[n]otwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law" (internal quotation marks omitted)).

Accordingly, the Appellate Court incorrectly determined that the trial court had not abused its discretion when it declined to award the plaintiff attorney's fees under the test applicable to punitive damages.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court insofar as it declined to award attorney's fees to the plaintiff and to remand the case to that court for its consideration of the plaintiff's request for an award of attorney's fees consistent with this opinion.

In this opinion the other justices concurred.

* December 11, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] It is undisputed that Wells Fargo Auto Finance is the successor in interest to Wachovia Dealer Services, Inc., and that it subsequently acquired the debt.

[2] A short block is a component of an engine on which other components are assembled.

[3] At trial, Scott testified that, although the estimate stated that it included installation, he intended the word "installation" to include only the removal of the car's engine and not the subsequent installation of the modified engine.

[4] A motor vehicle repair shop may apply to obtain an artificer's lien if it claims a lien on a motor vehicle in its possession on which it had completed authorized work that is properly recorded on an invoice, and, "if no application that the lien be dissolved upon such substitution of a bond is made within thirty days of the date of the completion of the work upon the property by the bailor for hire, the bailee shall immediately send a written notice of intent to sell to the Commissioner of Motor Vehicles, stating . . . the date the work was completed . . . [and] the amount for which a lien is claimed . . . . Upon approval by the commissioner of such notice, the commissioner shall issue the bailee an affidavit of compliance and such bailee shall provide such affidavit to the purchaser at the time of sale. . . ." General Statutes § 49-61 (b); see also Form H-100A, Connecticut Department of Motor Vehicles, available at https://portal.ct.gov/-/media/DMV/20/29/ H100Apdf.pdf (last visited December 9, 2020).

Although § 49-61 was the subject of certain amendments in 2014 and 2017; see Public Acts 2017, No. 17-104, § 1; Public Acts 2017, No. 17-79, § 20; Public Acts 2014, No. 14-130, § 27; those amendments have no bearing on the merits of this appeal. See footnote 7 of this opinion. In the interest of simplicity, we refer to the current revision of the statute.

[5] Specifically, the plaintiff alleged that the defendant had violated General Statutes § 14-65f (a) when it "obtained payment from Keithan, using [the plaintiff's] funds, through the artifice of falsely promising to install a new [e]ngine in the [v]ehicle and sought to perpetuate this ruse in its communications with [the plaintiff's] agent by deliberately attempting to pass off a used engine as new."

[6] During the trial, the trial court noted that the discharge of a personal debt is not "probative of whether . . . there was a valid lien." Because neither party has raised the issue of whether the plaintiff's lien is affected by the bankruptcy discharge of the plaintiff's judgment, we have no occasion to address it.

[7] The trial court found that the defendant violated General Statutes §§ 14-65f and 49-61. Section 14-65f provides in relevant part: "(a) (1) Prior to performing any repair work on a motor vehicle, a motor vehicle repair shop shall obtain a written authorization to perform the work . . . that includes an estimate in writing of the maximum cost to the customer of the parts and labor necessary for the specific job authorized. . . .

* * *

"(b) If the repair shop is unable to estimate the cost of repair because the specific repairs to be performed are not known at the time the vehicle is delivered to the repair shop, the written authorization required by this section need not include an estimate of the maximum cost of parts and labor. In such a case, prior to commencing any repairs, the repair shop shall notify the customer of the work to be performed and the estimated maximum cost to the customer of the necessary parts and labor, obtain the customer's written or oral authorization and record such information on the invoice.

. . .”

The court found that, although an oral authorization was provided by Keithan with respect to the defendant's estimate for the Buschur Racing short block, the estimate's explicit inclusion of a fixed cost for the "installation" of the modified engine was a misrepresentation on the part of the defendant.

In addition, § 49-61 provides in relevant part: "(b) . . . . Within ten days of receipt of such information relative to any lienholder, the bailee shall mail written notice to each lienholder by certified mail, return receipt requested, stating that the motor vehicle is being held by such bailee and has a lien upon it for repair and storage charges. . . .

* * *

"(e) . . . [I]f the last usual place of abode of the bailor is known to or may reasonably be ascertained by the bailee, *notice of the time and place of sale shall be given by mailing the notice* to him by certified mail, return receipt requested, at least ten days before the time of the sale, and similar notice shall be given to any officer who has placed an attachment on the property and, *if the property is a motor vehicle . . . any lienholder. . . .*" (Emphasis added.)

The court found that the defendant violated § 49-61 by failing to provide written notice of the auction to the plaintiff. The court concluded that "[t]he violation of [§ 49-61 (e)], together with [the defendant's] purported acquisition of lien rights in violation of § 14-65f, constitute a violation of CUTPA because each violation was both deceptive and a violation of public policy as found in §§ 14-65f and 49-61."

We note that the plaintiff was not a party to the transaction between the defendant and Keithan, and it is unclear on this record what legal authority entitled the plaintiff to assert a CUTPA violation on the basis of the defendant's misrepresentation to Keithan. It is also unclear how the defendant's failure to give notice to the plaintiff as a lienholder in accordance with § 49-61 constitutes a CUTPA violation because it is not obvious that the obligation to give statutory notice to a lienholder is within CUTPA's definition of "trade" and "commerce." See General Statutes § 42-110a (4) (" '[t]rade' and 'commerce' means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state"). We express no view on either of these issues because neither party has raised them before this court. See, e.g., *State* v. *Connor*, 321 Conn. 350, 362, 138 A.3d 265 (2016) ("[o]ur appellate courts generally do not consider issues that were not raised by the parties").

[8] The importance of the private consumer remedy itself has been emphasized during debate on various amendments to chapter 735a of the General Statutes. For example, Senator Stephen C. Casey remarked: "The bill in general would promote greater cooperation between public and private efforts to enforce the . . . trade practices act. The Attorney General's [O]ffice is hampered in this enforcement effort by limited staff. Private litigation under this act is essential and the proposal would ease the burden on private individuals and thus encourage private litigation." 22 S. Proc., Pt. 8, 1979 Sess., p. 2575; see also 19 H.R. Proc., Pt. 6, 1976 Sess., p. 2191, remarks of Representative Raymond C. Ferrari; 16 H.R. Proc., Pt. 14, 1973 Sess., p. 7323, remarks of Representative Howard A. Newman.

[9] "[C]ommon-law punitive damages are akin to statutorily authorized attorney's fees in practicality and purpose, insofar as both provide the same relief and serve the same function . . . namely, fully compensating injured parties." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Hylton* v. *Gunter*, supra, 313 Conn. 485–86. As we explained, punitive damages under CUTPA are distinct from common-law punitive damages because they are not intended merely to compensate the plaintiff for the harm caused by the defendant; they also serve to punish and deter reprehensible conduct. See, e.g., *Ulbrich* v. *Groth*, supra, 310 Conn. 455.