******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom D'AURIA, J., joins, concurring in the judgment. I agree with the majority that the trial court's order is an appealable final judgment. I also agree with the majority that the trial court's judgment granting the motions of the state and the victims that the defendant, Bruce John Bemer, be required to submit to human immunodeficiency virus (HIV) testing pursuant to General Statutes § 54-102a (b) and an examination for sexually transmitted diseases pursuant to § 54-102a (a)[1] must be reversed, and the case remanded to the trial court for further proceedings. I write separately, however, because I strongly disagree with the majority's conclusion that court-ordered HIV testing under § 54-102a (b) does not incorporate the rigorous standard and significant procedural safeguards that the legislature adopted and codified in General Statutes § 19a-582 (d) (8). Before any individual—even a criminal defendant—is forced by the state, against his will and without his consent, to submit to medical testing for HIV, both that high standard and those important safeguards must be adhered to in order for the testing to be lawful.

In my view, when the court was requested, before trial or conviction, to deploy the force of law against the defendant and to order him to be subjected to HIV testing, § 19a-582 (d) (8) required the court, among other things, to find that there is "a clear and imminent danger to the public health or the health of a person and that the person [requesting the testing] has demonstrated a compelling need for the HIV-related test result that cannot be accommodated by other means." General Statutes § 19a-582 (d) (8) (A). Because I conclude that well known principles of statutory construction reveal that the standard set forth in § 19a-582 (d) (8) is incorporated into court-ordered HIV testing under § 54-102a (b)—and because it is well settled that this court has a duty to construe statutes, whenever possible, to avoid the type of constitutional infirmities the majority has discerned in this case—I respectfully concur.

I agree with the majority's recitation of the facts. Accordingly, I turn to the defendant's claim that the trial court abused its discretion in ordering HIV testing pursuant to § 54-102a (b)[2] because the court did not adhere to the requirements of § 19a-582[3] that there first must be a finding of "a clear and imminent danger to the public health or the health of a person and that the person has demonstrated a compelling need for the HIV-related test result that cannot be accommodated by other means." General Statutes § 19a-582 (d) (8) (A). As the defendant points out, the state does not claim that the trial court made any such finding. Rather, the

state contends that § 54-102a (b) does not incorporate the standard set forth in § 19a-582 (d) (8) but, instead, broadly authorizes the trial court to order HIV testing when, as here, the defendant has been charged with committing an offense enumerated in § 54-102a (b) that involved a sexual act.

As the majority correctly notes, whether § 54-102a (b) incorporates the standard contained in § 19a-582 (d) (8) is a question of statutory interpretation over which our review is plenary. See part II of the majority opinion; see also, e.g., *Smith* v. *Rudolph*, 330 Conn. 138, 142–43, 191 A.3d 992 (2018). This court reviews §§ 54-102a (b) and 19a-582 (d) (8) in accordance with General Statutes § 1-2z and our familiar principles of statutory construction. See, e.g., *Smith* v. *Rudolph*, supra, 143. I am mindful that "the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 198, 3 A.3d 56 (2010).

I begin with § 54-102a (b), which provides in relevant part that, "[n]otwithstanding the provisions of section 19a-582," the trial court may, in specified criminal cases, including this one, order HIV testing of the defendant before the disposition of the case. Such testing is also subject to the following condition: "The provisions of *sections 19a-581 to 19a-585, inclusive*, and section 19a-590, *except any provision requiring the subject of an HIV-related test to provide informed consent prior to the performance of such test and any provision that would prohibit or limit the disclosure of the results of such test to the victim under this subsection, shall apply* to a test ordered under this subsection and the disclosure of the results of such test." (Emphasis added.) General Statutes § 54-102a (b).

Subsection (a) of § 19a-582 sets forth a general rule requiring an individual's informed consent before any HIV related testing. Subsection (d), however, provides several circumstances under which an individual's informed consent is not required before HIV related testing is performed.[4] Relevant to this case, subdivision (8) of § 19a-582 (d) allows another person to request that a court order involuntary testing of an individual when it has found that there is "a clear and imminent danger to the public health or the health of a person and that the person has demonstrated a compelling need for the HIV-related test result that cannot be accommodated by other means." General Statutes § 19a-582 (d) (8) (A). Subdivision (8) also provides guid-

ance to the trial court in assessing whether there is a compelling need for the HIV test result. Namely, it directs that, "[i]n assessing compelling need, the court shall weigh the need for a test result against the privacy interests of the test subject and the public interest that may be disserved by involuntary testing . . . ." General Statutes § 19a-582 (d) (8) (A).

As the majority explains, the issue in this case "stems from the parties' dispute over the proper reading of the '[n]otwithstanding the provisions of section 19a-582' language contained in the first sentence of § 54-102a (b) in light of the final sentence of that subsection, providing that a range of statutes, including § 19a-582, *applies* to an HIV testing order issued under § 54-102a (b), '*except any provision requiring the subject of an HIV-related test to provide informed consent* prior to the performance of such test and any provision that would prohibit or limit the disclosure of the results of such test to the victim under this subsection . . . .' General Statutes § 54-102a (b)." (Emphasis added.) Part II of the majority opinion. The defendant contends that the only way to reconcile these two provisions is to construe the "[n]otwithstanding" clause to apply only to the informed consent requirement of subsection (a) of § 19a-582 and not to the various exceptions pursuant to which informed consent is not needed, as set forth in subsection (d) of § 19a-582. Thus, the defendant argues, subdivision (8) of § 19a-582 (d), which allows testing without consent only after the court finds a clear and imminent danger and a compelling need for the testing, is not excepted from the purview of § 54-102a (b). Therefore, in the defendant's view, the requirements of subdivision (8) of § 19a-582 (d) must be met prior to the issuance of an order for HIV testing under § 54-102a (b). The state disagrees and contends that, because both the first and third sentences of § 54-102a (b) explicitly or implicitly provide that § 19a-582 does not apply to orders issued pursuant to § 54-102a (b), the trial court was not required to adhere to the standard set forth in § 19a-582 (d) (8) prior to issuing its order.

I agree with the defendant that, when the three sentences that make up § 54-102a (b) are read together; see *Historic District Commission* v. *Hall*, 282 Conn. 672, 684, 923 A.2d 726 (2007) ("[l]egislative intent is not to be found in an isolated sentence; the whole statute must be considered" (internal quotation marks omitted)); the "[n]otwithstanding" language in § 54-102a (b) is properly understood to apply only to those aspects of § 19a-582 that would require the defendant to give his informed consent and any provision that would limit or prohibit the disclosure of the test results to the victims. All other aspects of § 19a-582, including the standard set forth in subsection (d) (8), are still applicable. See General Statutes § 54-102a (b) ("[t]he provisions of *sections 19a-581 to 19a-585, inclusive . . . shall apply* to a test ordered under this subsection" (empha-

sis added)). This is consistent with our well settled principle of statutory construction that "specific terms in a statute covering a given subject matter will prevail over the more general language of the same or another statute that otherwise might be controlling." (Internal quotation marks omitted.) *Branford* v. *Santa Barbara*, 294 Conn. 803, 813, 988 A.2d 221 (2010). Here, the first sentence of § 54-102a (b) generally provides that, "[n]otwithstanding the provisions of section 19a-582," the court may order testing. The final sentence of that statutory provision, however, clearly specifies that it is only those provisions requiring the defendant's informed consent or limiting disclosure that are excepted from the statute. Because § 19a-582 (d) (8) provides for court-ordered testing *without* the defendant's consent and does not limit the disclosure of test results to victims, it is not excepted from § 54-102a (b).

Construing the "[n]otwithstanding the provisions of section 19a-582" language in the first sentence of § 54-102a (b) to apply to the entirety of § 19a-582, as the majority does, denudes the last sentence of § 54-102a (b), which provides in relevant part that "sections 19a-581 to 19a-585, *inclusive . . . shall apply*," of any meaning. (Emphasis added.) As discussed, the vitality of those statutory provisions, including § 19a-582, is limited only insofar as any provision within the range of those statutes requires informed consent or limits the disclosure of the test results to the victim. Nothing in § 54-102a (b) excises the imminent danger and compelling need statutory standard contained in § 19a-582 (d) (8). Moreover, of the five statutes specifically incorporated by reference in § 54-102a (b), which span approximately ten pages of our General Statutes, only § 19a-582—nay, one *subsection* of § 19a-582—deals with consent.[5] Because the legislature included § 19a-582 in the list of applicable statutes, it cannot be entirely read out of § 54-102a (b), as the majority concludes. Cf. *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010) ("[I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.)).[6]

When the applicable statutory provisions are considered together, it is entirely consistent that § 54-102a (b) would provide for court-ordered HIV testing in criminal cases without the defendant's consent provided the court follows the standard and requirements set forth in § 19a-582 (d) (8). Put differently, § 19a-582 (d) (8) supplements and completes § 54-102a (b) by providing a legislatively considered and approved standard that must be met before a court may order a criminal defendant to involuntarily submit to HIV testing under § 54-

102a (b). Without it, there would be no standard at all. We ought to hesitate, at some length, before we conclude that the legislature intentionally adopted a strict and rigorous standard for nonconsensual HIV testing that would apply in a civil, sexual assault action brought by a victim against a defendant but nevertheless chose to provide no standard at all for the exact same test in a criminal prosecution for the exact same sexual assault. Because §§ 54-102a (b) and 19a-582 (d) (8) can be reconciled with both statutes being given effect, we have an obligation to do so. Cf. *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 377–78, 977 A.2d 650 (2009) (we attempt to reconcile conflicting statutes in manner that allows for their coexistence).

In addition to its conclusion that the compelling need and imminent harm requirements are inapplicable to court-ordered, involuntary HIV testing under § 54-102a (b), the majority's holding also jettisons the procedural safeguards contained in § 19a-582 (d) (8) (B) through (D). Specifically, these provisions provide privacy protections for the defendant; General Statutes § 19a-582 (d) (8) (B); afford the defendant notice and an opportunity to participate in the proceeding; General Statutes § 19a-582 (d) (8) (C); and provide that the proceedings surrounding the involuntary testing generally must be conducted in camera. General Statutes § 19a-582 (d) (8) (D). Thus, the majority's conclusion that § 19a-582 (d) (8) is inapplicable to HIV testing ordered pursuant to § 54-102a (b) leaves the trial court with no standard to apply or procedural safeguards to follow throughout the proceeding.

Moreover, a review of the broader statutory scheme provides further support for the conclusion that the requirements in § 19a-582 (d) (8) are applicable to an order issued pursuant to § 54-102a (b). General Statutes § 19a-583, which, without question, falls within the ambit of § 54-102a (b), provides guidance on the disclosure of HIV related information. Significantly, subdivision (10) of § 19a-583 (a) incorporates the same imminent danger and compelling need standard that is included in § 19a-582 (d) (8). Section 19a-583 provides in relevant part: "(a) *No person who obtains confidential HIV-related information may disclose* or be compelled to disclose such information, except to the following:

* * *

"(10) Any person allowed access to such information by a court order which is issued in compliance with the following provisions: (A) *No court of this state shall issue such order unless the court finds a clear and imminent danger to the public health or the health of a person and that the person has demonstrated a compelling need for the test results which cannot be accommodated by other means. . . .*" (Emphasis added.) For example, under General Statutes § 54-102c, when a trial court orders an HIV test pursuant to § 54-

102a, a victim may designate a health care provider to disclose the results to the victim. Whether the health care provider can disclose the results to the victim is, in turn, determined based on § 19a-583 (a) (10) because that provision sets the parameters for disclosure of HIV test results and is incorporated into § 54-102a. See General Statutes § 54-102a (b) ("[t]he provisions of sections 19a-581 to 19a-585 . . . shall apply"). Thus, in order for the victim's designated health care provider, or anyone else, to disclose the results of the HIV test to the victim, the provider must ensure that the same standard found in § 19a-582 (d) (8) has been satisfied. See General Statutes § 19a-583 (a) (10).

It would be a bizarre and unworkable result if a criminal trial court, guided by no meaningful standard, could order involuntary HIV tests when, simultaneously, the only way the results could legally be disclosed to the victim would be by ensuring that the imminent danger and compelling need requirements of § 19a-583 (a) (10) had been employed by the trial court before it issued the order. In other words, the court could order the test, but the victim would not be able to lawfully obtain the results.[7] I would not construe the statutory scheme to create such a bizarre result. See, e.g., *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 803, 955 A.2d 15 (2008) ("[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended" (internal quotation marks omitted)).

The majority's construction of § 54-102a (b), which renders the entirety of § 19a-582 inapplicable under § 54-102a, also leads to an inconsistency in the provision of counseling services, which would be afforded to victims but not to criminal defendants who test positive for HIV. Specifically, § 19a-582 (c) provides for certain counseling services to a defendant, which are designed to, among other things, provide the defendant with assistance to obtain treatment and to notify sexual partners. These critical counseling services would not be available to defendants under the majority's construction of § 54-102a (b) because all of § 19a-582 is inapplicable to HIV testing ordered under subsection (b) of § 54-102a. Pursuant to § 54-102c, however, the victims would be given such counseling services. Thus, the majority's construction would result in victims receiving counseling services but not defendants, who, naturally, should also be encouraged to obtain treatment and to notify their partners of their HIV status.[8] Indeed, this court has previously explained the importance of identifying individuals who are HIV positive in order to provide them with education and treatment. See, e.g., *Doe* v. *Marselle*, 236 Conn. 845, 852, 675 A.2d 835 (1996) ("[the requirements of chapter 368x of the General Statutes] relate principally to the areas of informed consent for HIV testing and confidential treatment of HIV-related information, and are *aimed at helping health care pro-*

*viders to identify those people with the disease, to treat them and to educate them*" (emphasis added)). This concern applies with equal force to both victims and defendants.

The majority, however, claims that § 54-102a (b), which pertains to HIV testing in pending criminal cases, and General Statutes § 54-102b, which pertains to HIV testing in cases following a defendant's conviction, are materially identical, such that § 19a-582 (d) (8) either applies to both provisions or to neither. See part II of the majority opinion. As a result, the majority asserts, under the defendant's construction of § 54-102a (b), the imminent harm and compelling need requirements of subdivision (8) of § 19a-582 (d) also apply to § 54-102b, when the defendant has been found guilty beyond a reasonable doubt. See id. The majority concludes that "[i]t simply is impossible to believe that the legislature would have imposed that same exacting standard when the state has already established that the victim was sexually assaulted by the defendant and in all other circumstances in which someone is prompted, for whatever reason, to seek an order requiring another person to submit to an HIV test." (Emphasis omitted.) Text accompanying footnote 16 of the majority opinion.

I respectfully disagree. I first note that, when an individual has been *charged* with certain offenses, § 54-102a (b) provides that the court "may" order the HIV testing, whereas, when an individual has been *convicted* of certain offenses, § 54-102b (a) provides that the court "shall," at the victim's request, order HIV testing. It is logical that the trial court would be afforded discretion to order HIV testing when a defendant has only been charged with a crime but is directed to order the testing after the defendant has been convicted.

More important, I find it troubling that the majority construes § 54-102a (b) such that an individual who has not been convicted of a crime and enjoys the presumption of innocence may be subjected to involuntary testing based only on the fact that he was charged with one of the enumerated offenses. Contrary to the majority's conclusion that §§ 54-102a (b) and 54-102b are materially identical, such that subdivision (8) of § 19a-582 (d) either applies to both provisions or it applies to neither, § 54-102b is even clearer than § 54-102a (b) that the provisions of § 19a-582 (d) (8), which provide the standard for obtaining a court-ordered HIV test without the consent of the defendant, are also applicable to a test ordered for someone who has been convicted. Indeed, the issue in this case stems from the parties' dispute over the proper reading of the "[n]otwithstanding the provisions of section 19a-582" language contained in the first sentence of § 54-102a (b). There is no such language in § 54-102b. Rather, § 54-102b provides only that "[t]he provisions of sections 19a-581 to 19a-585, inclusive, and section 19a-590, except the requirement

that the subject of an HIV-related test provide informed consent prior to the performance of such test, shall apply to a test ordered under this section." General Statutes § 54-102b (b). There can be no question that the rigorous standard and procedural safeguards contained in § 19a-582 (d) (8) apply to involuntary HIV testing of a convicted person. It would be illogical to conclude that the more stringent, statutory standard to order an HIV test would apply to someone who has been convicted but that someone who has been merely arrested and charged with a crime could be ordered to have an involuntary HIV test conducted on him under the more lenient, less exacting standard, articulated in part III of the majority opinion.

As I am sure the majority would, I acknowledge that § 54-102a (b) is not a model of clarity, but the interpretation advanced by the state and the majority would permit trial courts to order HIV testing anytime the defendant has been charged with one of the offenses enumerated in the statute, the alleged offense involved a completed sexual act, and the criminal case is pending. As the majority acknowledges in part III of its opinion, this is nearly standardless and requires this court to supply an interpretive gloss to save the constitutionality of § 54-102a (b). "[I]t is well established that this court has a duty to construe statutes, whenever possible, to avoid constitutional infirmities . . . ." (Internal quotation marks omitted.) *Kuchta* v. *Arisian*, 329 Conn. 530, 548, 187 A.3d 408 (2018); see also *State* v. *Cook*, 287 Conn. 237, 245, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). "[W]hen called [on] to interpret a statute, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Internal quotation marks omitted.) *State* v. *Floyd*, 217 Conn. 73, 79, 584 A.2d 1157 (1991). Given that § 19a-582 (d) (8) supplies the legislatively determined standard for the court to apply when ordering HIV testing under § 54-102a (b), I fail to see why the majority has created a constitutional problem by unnecessarily construing § 54-102a (b) in a manner necessitating an interpretive gloss to save the constitutionality of the statute.[9] As we have explained, "[e]stablished wisdom counsels us to exercise self-restraint so as to eschew unnecessary determinations of constitutional questions. . . . It is nevertheless relevant to our construction of the statute that our interpretation avoids constitutional perils." (Citations omitted; internal quotation marks omitted.) Id., 89–90. Consistent with this principle, I conclude that the "[n]otwithstanding" language in § 54-102a (b) applies only to those aspects of § 19a-582 that would require the defendant's informed consent and any provision that would limit or prohibit the disclosure of the test results to the victims. All other aspects of § 19a-582—including the court procedures and legal standard set forth in subsection (d) (8)—

remain applicable to a court order for involuntary HIV testing under § 54-102a (b).

With respect to a court-ordered examination for sexually transmitted diseases pursuant to § 54-102a (a), the majority correctly notes, and the defendant conceded at oral argument, that the requirements for ordering HIV testing under § 19a-582 (d) (8) do not apply to motions for an examination for sexually transmitted diseases under § 54-102a (a). See part II of the majority opinion. The majority thus states that, "even if we were to interpret § 54-102a (b) to avoid the need for a constitutional gloss on that statutory subsection, we still would have to place the identical gloss on its companion subsection, § 54-102a (a), pertaining to examination for sexually transmitted diseases." (Emphasis omitted.) Footnote 20 of the majority opinion. As a result, the standards for court-ordered testing for HIV and for an examination for sexually transmitted diseases would be different.

To the extent the majority reasons that this court must supply an interpretive gloss to subsection (b) of § 54-102a because subsection (a) of that statute requires one and the two subsections must have the same standard, I disagree. It is reasonable that court-ordered testing for HIV and an examination for sexually transmitted diseases would be treated differently. In fact, the legislature has emphasized that the disclosure of an individual's HIV status can deter future HIV testing and can lead to discrimination. See, e.g., *Doe* v. *Marselle*, supra, 236 Conn. 853–54 (chief of AIDS section for then Department of Health Services testified before legislature, "emphasizing that confidentiality is essential 'to protect people from the discrimination that often comes with the knowledge that a person has AIDS [acquired immune deficiency syndrome] or HIV infection' "). Specifically, in § 19a-583 (a) (10), which sets forth the limitations for the disclosure of HIV related information, the legislature directed courts that, "[i]n assessing compelling need, the court shall weigh the need for disclosure against the privacy interest of the test subject and the public interest which may be disserved by disclosure w*hich deters future testing or which may lead to discrimination*." (Emphasis added.) General Statutes § 19a-583 (a) (10) (A).

It is entirely reasonable to conclude that the legislature treated testing for HIV and an examination for sexually transmitted diseases differently given the heightened discrimination and stigma that HIV status carries. The persistent, endemic discrimination, and even criminalization, related to HIV is undeniable in our country. People living with HIV face, among other things, significant housing discrimination; see, e.g., The Center for HIV Law & Policy, Housing Rights of People Living with HIV/AIDS: A Primer (March, 2010) p. 3, available at https://www.hivlawandpolicy.org/sites/

default/files/housingprimer3.10.pdf (last visited July 13, 2021); and employment discrimination. See, e.g., The Center for HIV Law & Policy, Employment Rights of People Living with HIV/AIDS: A Primer (September, 2010) p. 4, available at https://www.hivlawandpolicy.org/sites/default/files/CHLP%20Employment%20Primer%20sept%202010%20FINAL.pdf (last visited July 13, 2021). Additionally, "[a]s of 2020, [thirty-seven] states have laws that criminalize HIV exposure"; Centers for Disease Control & Prevention, HIV and STD Criminalization Laws (last updated December 21, 2020), available at https://www.cdc.gov/hiv/policies/law/states/exposure.html (last visited July 13, 2021); despite the fact that "empirical studies on the impact of these laws suggest that they do not decrease HIV infections or have any other positive public health impacts," and that these laws may actually result in higher rates of transmission. Z. Lazzarini et al., "Criminalization of HIV Transmission and Exposure: Research and Policy Agenda," 103 Am. J. Pub. Health 1350, 1352 (2013). An individual's HIV status carries with it various stigmas that are not implicated to the same extent as an individual's sexually transmitted disease status. See, e.g., B. Anderson, "HIV Stigma and Discrimination Persist, Even in Health Care," 11 AMA J. Ethics 998, 998 (2009) ("HIV *is* different from many other diseases. Finding out that one has HIV presents complex physical, emotional, social, and legal concerns that do not arise when one is tested for other conditions, including other communicable diseases." (Emphasis in original.)). As such, it is logical to conclude that a trial court would be required to employ two different standards when ordering involuntary testing for HIV and an examination for sexually transmitted diseases.

Accordingly, I would conclude that the requirements set forth in § 19a-582 (d) (8) must be met prior to the issuance of an order for involuntary HIV testing under § 54-102a (b). The requirements set forth in part III of the majority opinion—namely, that the testing would provide useful, practical information that cannot reasonably be obtained otherwise—would be applicable to a court-ordered examination for sexually transmitted diseases under § 54-102a (a). Because the trial court did not apply either standard, I would reverse the decision of the trial court to grant the motions of the state and the victims that the defendant be required to submit to HIV testing pursuant to § 54-102a (b) and an examination for sexually transmitted diseases pursuant to § 54-102a (a), and remand the case to the trial court for further proceedings.

Accordingly, I concur in the judgment.

[1] Although § 54-102a (a) was the subject of a technical amendment in 2018; see Public Acts 2018, No. 18-168, § 29; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] General Statutes § 54-102a (b) provides in relevant part: "Notwithstanding the provisions of section 19a-582, the court before which is pending any

case involving a violation of section 53-21 or any provision of sections 53a-65 to 53a-89, inclusive, that involved a sexual act, as defined in section 54-102b, may, before final disposition of such case, order the testing of the accused person . . . for the presence of the etiologic agent for acquired immune deficiency syndrome or human immunodeficiency virus . . . . If the victim of the offense requests that the accused person . . . be tested, the court may order the testing of the accused person . . . in accordance with this subsection and the results of such test may be disclosed to the victim. The provisions of sections 19a-581 to 19a-585, inclusive, and section 19a-590, except any provision requiring the subject of an HIV-related test to provide informed consent prior to the performance of such test and any provision that would prohibit or limit the disclosure of the results of such test to the victim under this subsection, shall apply to a test ordered under this subsection and the disclosure of the results of such test."

[3] General Statutes § 19a-582 provides in relevant part: "(a) Except as required pursuant to section 19a-586, a person who has provided general consent as described in this section for the performance of medical procedures and tests is not required to also sign or be presented with a specific informed consent form relating to medical procedures or tests to determine human immunodeficiency virus infection or antibodies to human immunodeficiency virus. General consent shall include instruction to the patient that: (1) As part of the medical procedures or tests, the patient may be tested for human immunodeficiency virus, and (2) such testing is voluntary and that the patient can choose not to be tested for human immunodeficiency virus or antibodies to human immunodeficiency virus. General consent that includes HIV-related testing shall be obtained without undue inducement or any element of compulsion, fraud, deceit, duress or other form of constraint or coercion. If a patient declines an HIV-related test, such decision by the patient shall be documented in the medical record. The consent of a parent or guardian shall not be a prerequisite to testing of a minor. The laboratory shall report the test result to the person who orders the performance of the test.

* * *

"(d) The provisions of this section shall not apply to the performance of an HIV-related test:

* * *

"(8) Under a court order that is issued in compliance with the following provisions: (A) No court of this state shall issue such order unless the court finds a clear and imminent danger to the public health or the health of a person and that the person has demonstrated a compelling need for the HIV-related test result that cannot be accommodated by other means. In assessing compelling need, the court shall weigh the need for a test result against the privacy interests of the test subject and the public interest that may be disserved by involuntary testing, (B) pleadings pertaining to the request for an involuntary test shall substitute a pseudonym for the true name of the subject to be tested. The disclosure to the parties of the subject's true name shall be communicated confidentially, in documents not filed with the court, (C) before granting any such order, the court shall provide the individual on whom a test result is being sought with notice and a reasonable opportunity to participate in the proceeding if he or she is not already a party, (D) court proceedings as to involuntary testing shall be conducted in camera unless the subject of the test agrees to a hearing in open court or unless the court determines that a public hearing is necessary to the public interest and the proper administration of justice . . . ."

[4] Subsections (b) and (c) of § 19a-582 pertain to persons administering tests authorized under that section. Subsection (b) addresses limited liability for persons ordering a test without informed consent. Subsection (c) provides for counseling and referrals with the disclosure of test results.

[5] In addition to General Statutes §§ 19a-581 through 19a-585, General Statutes § 19a-590 is also incorporated by reference in § 54-102a (b) and does not deal with consent.

[6] The majority nevertheless concludes, as the state contends, that, if § 54-102a (b) incorporates § 19a-582 (d) (8), § 54-102a (b) would be rendered superfluous. See part II of the majority opinion. I disagree. Although it is true that § 19a-582 (d) (8) preexisted § 54-102a (b), § 54-102a (b) gives victims standing in a criminal proceeding to request a court-ordered HIV test of the defendant that they would not otherwise have had. See General Statutes § 54-102a (b) ("[i]f the victim of the offense requests that the accused person . . . be tested, the court may order the testing of the accused person . . . in accordance with this subsection and the results of such test may be

disclosed to the victim"). This provision is one of the very limited circumstances in which a victim has standing in the criminal context to assert his or her own interests. Indeed, we have held that victims do not have standing to assert their own constitutionally protected rights as victims in criminal proceedings when the defendant who perpetrated those crimes is being prosecuted. See, e.g., *State* v. *Gault*, 304 Conn. 330, 342–43, 39 A.3d 1105 (2012); see also, e.g., *State* v. *Skipwith*, 326 Conn. 512, 528, 165 A.3d 1211 (2017) (*McDonald, J.*, concurring in the judgment). But for the enactment of § 54-102a (b), the victim could not—as the victims here—rely on the state to seek the court's intervention. Instead, the victim would have to initiate a separate, civil action asserting a claim against the defendant, with all the attendant expenses, in order to seek a similar court order pursuant to § 19a-582 (d) (8).

[7] I also note that, unlike in General Statutes § 54-102b, which specifically provides that the results of an HIV test must be disclosed to the offender who is tested after his conviction, there is nothing in the statutory scheme in § 54-102a (b) that provides for the defendant to be notified of the results of his involuntary HIV test taken while he has only been charged with a crime. Compare General Statutes § 54-102b (a) ("court . . . shall . . . order . . . that the results be disclosed to the victim and the offender") with General Statutes § 54-102a (b) ("the results of such test may be disclosed to the victim").

Although § 54-102b was the subject of a technical amendment in 2019; see Public Acts 2019, No. 19-189, § 32; that amendment has no bearing on the merits of this appeal. For convenience, we refer to the current revision of the statute.

[8] The majority asserts that the counseling services provided for by § 54-102c are "certain publicly available 'educational materials' and 'information' obtainable through the Department of Public Health, all of which a defendant, or his or her counsel, may readily obtain upon request." Footnote 16 of the majority opinion. The majority cites to no source of authority obligating the trial court to provide these services and information to the defendant. That the defendant may request it means little if there is no obligation for the trial court to provide it.

[9] The majority also notes that it "know[s] of no other court that has found [a provision like § 54-102a] to be unconstitutional or determined that an interpretive gloss was necessary to avoid constitutional infirmity. In these circumstances, the tenet of statutory construction on which the concurrence relies simply has no utility in evaluating legislative intent." Footnote 20 of the majority opinion. The majority need look no further than the present case, in which the majority itself recognizes that, under its construction of the statute, an interpretive gloss is necessary to save the constitutionality of the statute. Indeed, it is for this reason that I fail to understand how the majority can conclude that its construction is "the only reasonable one"; id.; when that construction renders the statute unconstitutional without its supplied judicial gloss.